GRAY AND WIFE
vs
PATTON.

*Apperson* for plaintiff; *Peters* for defendant.

---

ÉJECTMENT.

Case 4.

September 13.

Case stated and decision of the Circuit Court.

## Gray and wife *vs* Patton.

ERROR TO THE SHELBY CIRCUIT.

*Femes covert.    Conveyances.    Limitation.*

CHIEF JUSTICE ROBERTSON delivered the Opinion of the Court.

JOHN T. GRAY and wife seek the reversal of a judgment of eviction, for a lot in the city of *Louisville*, rendered against them in an action of *ejectment* on the de-

mise of *Thomas W. Patton*, who claims as only heir of his mother.

On the trial the lessor exhibited a conveyance from the trustees of *Louisville* to *Joseph Sanders* and from *Sanders* to *George Watts*, the lessor's maternal grandfather, and a certified copy of his said grandfather's *will*, devising the lot to the *devisor's* daughter, who was the lessor's mother: and he also proved that his mother had died in December, 1822, and his father in July, 1837. *Gray* relied on a deed purporting to be a conveyance of the lot in 1797, from *Samuel Patton* and his wife, who were the lessor's parents, and on sundry derivative conveyances under which he (*Gray*) and his wife and those under whom they claim title, had occupied and enjoyed it for about forty years. But the only authentication of *Mrs. Patton's* acknowledgment of the deed of 1797, was a certificate by the clerk of the *Jefferson* County Court, showing that in 1806 she had, upon privy examination, made the statutory acknowledgment before two Justices of the Peace for *Hardin* county, where she then resided, and that their certificate, together with the deed, had been duly recorded as required by law; and there being no record proof of any special commission to the said justices to take the acknowledgment, the Circuit Judge decided that the conveyance of 1797, with the certificate of the justices, as certified by the clerk, was insufficient to prove that *Mrs. Patton* had conveyed her legal title. That decision presents the main question for revision. But we will first briefly dispose of some less important points involved in the record.

After notice to several persons sued as terre-tenants, and before any service of a common order or an appearance by any of them, *Gray and wife* were made defendants. And, as the record does not show any privity between those defendants and the tenants in possession, their counsel insists that the judgment against "*the defendants*" is erroneous. But, however irregular or ineffectual, as to the tenants, the proceedings in this respect may be admitted to have been, still *Gray and wife* cannot have been prejudiced thereby, and cannot, on their writ of error, urge that as a ground for reversal. Whether

*Where several are sued in ejectment as terretenants, and no service of common order or any appearance by any of them, and one be admitted to defend, and the record show no privity between such defendants & those in possession, though a judgment against such may be er-*

GRAY AND WIFE
*vs*
PATTON.

roneous, yet one so admitted to defend cannot avail himself thereof.

A will made in Virginia & there proved and recorded before the separation, is good to pass lands in Ky. and a copy from the probate court of Virginia properly certified, is evidence here under the act of 1797.

there is either no judgment, or an erroneous judgment, against the occupants, this writ of error by *Gray and wife* alone does not authorize us to decide.

A copy of the will of *Watts,* certified from a probate court of *Virginia,* where he resided, was objected to as evidence, on the ground that the *Virginia* court had no jurisdiction so far as the lot in *Kentucky* was concerned. Admitting, as we may, that this objection would be unanswerable if the probate had been since the political separation of *Kentucky* from *Virginia,* still, as the will was proved and admitted to record in *Virginia* when *Kentucky* was a portion thereof, the probate was as effectual here as it would have been had it been made in *Louisville* itself: *Morgan's adm'r.* vs *Gaines et al.* 3 *A. K. Marshall,* 614.

The plaintiffs in error also insist that the deed by the trustees in 1783, was ineffectual for want of sufficient authority and title. But, as the facts bearing on this point are substantially the same as those considered in the case of *Fitzhugh et al.* vs *Croghan,* 2 *J. J. Marshall,* 432, the decision in that case, which we still approve, must overrule this assignment of error also.

Upon the main and only remaining question deemed worthy of consideration, we feel some perplexity.

A *feme covert* could not effectually pass her estate of inheritance in law, by acknowledgment & privy examination before two Justices of the Peace, unless they acted under a commission from the county where the land lies and unless such commission, with the deed and certificate were recorded in the county where the lands lay.

Our predecessors having, more than once, decided that under the 4th section of the act of 1797, 1 *Stat. Law,* 440, copied from a *Virginia* statute of 1785, an acknowledgment before Justices of the Peace, without a special commission, is insufficient to pass any other estate of a married woman in land than that of *dower;* as to which the act of 1792 may operate, we do not feel authorized now to inquire whether a less literal interpretation would have been more consistent with justice and our entire system of legislation on the subject of such conveyances; and although it has not, so far as we know, been hitherto explicitly decided that the registration of the commission, as well as that of the certificate, is required by the statute of 1797, as indispensable to the conclusiveness of a conveyance by a *feme covert* of her inheritable interest in real estate; yet, as the statute requires the recording of the deed "together with *such com-*

*mission* and certificate," and as this court has frequently decided that the title does not pass without the prescribed registration of the certificate, we cannot consistently avoid the judicial conclusion that the title cannot be legally divested unless the commission, when one is necessary, shall have been also, in like manner, recorded.

Had not the statute imperatively required the recording of the commission, we would presume that a sufficient one had been issued to the justices who certified the privy examination in this case; for it would be proper then to apply the general presumption of law, after so long a lapse of time, that the official act had been, in all respects, right, except only so far as it might expressly appear to have been illegal.

But we are not allowed to presume the *recording* of that which the unlost and unmutilated *record* does not show to have ever been recorded: nor can we, without even a suggestion to that effect, presume that the record, as certified in this case, does not exhibit all that was ever recorded in the clerk's office of *Jefferson.*.

We cannot, therefore, decide that upon this last and principal question, the Circuit Judge instructed the jury erroneously, unless the 11th section of an act of 1831, 1 *Stat. Law*, 453, applies availably in such a case as this. So much of that enactment as can be material on that subject is as follows:

"Sec. 11. *Be it further enacted,* That in all cases, where a deed of conveyance has been heretofore made by a *baron* and *feme*, and the same has been duly executed, but with this defect only, that a *dedimus potestatem* did not issue in the first instance, authorizing the justices to take the privy examination of the *feme*, that the grantor or those claiming the land, under such deed, may exhibit a bill in chancery, at any time after the first day of January, one thousand eight hundred and thirty-eight, in the court of the circuit where the land may be situated: and upon full and satisfactory proof being made that such deed has been executed by *baron* and *feme*, without fraud or guile, and that there has been seven years peaceable, continued and uninterrupted possession under such deed, since the passage of this act, and that the only defect is

They will not presume that a commission for the privy examination of a *feme covert* had issued and been lost (as the law required it to be *recorded* with the deed) where every thing else appears to make the conveyance complete and there is no allegation or proof of such loss.

GRAY AND WIFE
vs
PATTON.

the want of a *dedimus potestatem*, to take the acknowledgment and make the privy examination, to decree a confirmation of such deed, and to make such other order as may be necessary to perfect the title. *Provided, however*, That so much of this act as authorizes a suit against *feme coverts*, to obtain a due execution of deeds made without a *dedimus potestatem*, or for any defect in taking the privy examination, shall not be so construed as to apply to any case where a *feme* has commenced suit to recover her estate or dower in lands, or where such suit shall be commenced within the term of seven years aforesaid, next after the passage of this act."

The legislative provision just quoted, contemplated and embraced such a relinquishment as that which appears to have been made in this case; and waiving the important question whether the legislature could, consistently with the constitution, have at once legalized such invalid relinquishments, and whether thereby there would have been a divestiture of any vested rights, we have no doubt that an act limiting the right of sueing or taking away, prospectively, the disability of coverture after a cause of suit had accrued, should be deemed perfectly constitutional. And if such can be considered to be the constructive effect of the 11th section of the act of 1831, the action might, perhaps, be barred in this case, and the technical invalidity of the relinquishment thereby cured; for more than seven years had elapsed from the date of this statute, before the commencement of the action, and although the lessor's mother had no cause of action during her life, because the estate had certainly passed during the life of her husband, who survived her, nevertheless, he died almost a year before the expiration of the seven years prescribed by the statute, and thereby a right of action had accrued to the lessor nearly a year before the expiration of that limitation.

The 11th sec. of the act of 1831, does not, after 7 years, give to defective relinquishments of dower, the effect of a legal conveyance, and a

However, the 11th section has not expressly declared that there should be such a legal bar: it only authorizes, after seven years, a suit in Chancery for enforcing such a relinquishment by a decree of confirmation, thereby virtually declaring that after the seven years such relinquishment might be good and available in Equity. And in a

case like this, in which a cause of action had accrued during the seven years, the Legislature certainly had the power to impart to such a relinquishment validity, either in a court of equity or in a court of law, whatever question there might be as to the power in a case in which a cause of action had not accrued during that statutory period. But we are of the opinion that the provisions of this section should not be construed as having the effect, *per se*, of confirming the *legal* title after the expiration of the seven years: and consequently, in our judgment, this enactment cannot operate as a bar to this action of ejectment. We need not, therefore, decide the important question whether the statute, when applied to the facts now appearing in this case, has made the relinquishment constitutionally valid and enforcible in Equity.

It is, therefore, considered that the judgment of the Circuit Court be affirmed.

*Pirtle and T. P. Wilson* for plaintiffs; *C. A. Wickliffe* for defendant.

<div style="margin">BATCHELOR
*vs*
HICKMAN *et al.*
legal bar to the suit in ejectment of the grantor or his heir.</div>