The point raised upon this appeal is that no personal service upon Maginn of the notice of the application made on the 29th of March was made, and, inasmuch as the section of the Code requires such personal service, the court acquired no jurisdiction of the proceeding. Maginn had notice of the commencement of the proceeding by personal service of the petition and original notice, and all that was thereafter done was in that one proceeding pursuant to that notice. There was no real merit in the objection to a hearing on the 28th, and the court might well have overruled it and made the order appointing a committee on that day. It saw fit, however, to continue the proceeding to the next day, and made and provided for service of the order to show cause, and then the application was properly heard and disposed of. There seems to be no objection to the persons appointed as committee, and the need of a committee is undoubted. The objection here raised is technical, and without real merit, and the order should not be reversed.

It is claimed that we should dismiss the appeal upon the facts appearing upon the motion. The order provided that the committee should pay the hospital the amount due it for the care of Maginn, and the committee complied with that provision. It also provided that Baxter should have free access to Maginn during the continuance of the habeas corpus proceedings, and that provision was complied with. It also provided that the committee should supply Baxter with money for expenses in the habeas corpus proceedings, and should pay him $20 costs of the proceeding in which the order was made. These provisions were complied with, and Baxter was paid for the expenses referred to $100, and costs $20. It is said we should hold that by accepting the moneys provided to be paid Baxter for the benefit of Maginn the appeal and the right to appeal from the order had been waived. We conclude, however, to deny the motion to dismiss the appeal, and affirm the order appealed from, which is accordingly done.

Order affirmed, with costs. All concur.

---

(100 App. Div. 414)

KNICKERBOCKER INV. CO. v. VOORHEES et al.

(Supreme Court, Appellate Division, First Department. January 20, 1905.)

1. CORPORATIONS—VOTING TRUST—FRAUD—INJUNCTION.
    Where, in a suit by a corporation to terminate a voting trust of stock which it owned in another corporation, on motion for a temporary injunction, it appeared that under the voting trust agreement the management of the affairs of plaintiff had been virtually turned over to persons who had but little personal interest therein or in the success of the other corporation, slight evidence of bad faith would be sufficient to justify a finding that the execution of the voting trust agreement was procured by fraud so as to authorize the grant of the injunction.

2. SAME—INJUNCTION—STATUTES.
    Insurance Law, Laws 1892, p. 1958, c. 690, § 56, provides that no order, judgment, or decree restraining or interfering with the prosecution of the business of any domestic insurance company shall be made otherwise than on the application of the Attorney General after the approval of the Superintendent of Insurance. Held, that where a corporation

sued to set aside a voting trust of stock owned by it in a domestic life-insurance company on the ground that it was procured by fraud, an injunction pendente lite restraining the voting trustees from taking any further action with ·reference to voting stock of the plaintiff, but which did not enjoin them from acting as officers of the insurance company, or from voting their own stock in the insurance company, was not violative· of the statute.

Van Brunt, P. J., and Ingraham, J., dissenting.

Appeal from Special Term.

Suit by the Knickerbocker Investment Company against Foster M. Voorhees and others as individuals and as voting trustees of the stock in the Bankers' Life Insurance Company. From an order continuing pendente lite an injunction granted ex parte, defendants appeal. Affirmed.

Argued before VAN BRUNT, P. J., and HATCH, PATTERSON, INGRAHAM, and LAUGHLIN, JJ.

Herbert Barry, for appellants.
Eugene Van Schaick, for respondent.

LAUGHLIN, J.   The plaintiff is a corporation organized under the· laws of New Jersey for the purpose, as shown by the admissions in the· answers and the affidavit of its president presented by the defendants in opposition to the motion, of controlling or managing and operating a new life insurance company through ownership of the majority of the shares of the capital stock.   The incorporators of the plaintiff originally contemplated organizing, owning, and operating the Lincoln National Life Insurance Company, but they abandoned that project, and decided to obtain control of the Bankers' Life Insurance Company, which was an existing, successful, insurance corporation organized under the laws of New York, having 1,000 shares of capital stock of the par value of $100 each.   The plaintiff corporation purchased 626 of these shares of stock, and by resolution of its board of directors constituted the individual defendants voting trustees thereof for the period of five years.   The plaintiff now desires to terminate this voting trust, and to manage its stock in the insurance company as its duly elected. directors may deem best for its interests; and it brings this action to· annul the so-called voting trust on three grounds:   First, that it was void upon its face; second, that it was void for fraud, in that its execution was obtained through false and fraudulent material misrepresentations of two of the individual defendants; and, third, that the voting trustees have been guilty of bad faith and mismanagement justifying its rescission.   The temporary injunction order from which the appeal is taken enjoins the individual defendants from voting on the stock at any meeting of the stockholders of the insurance company,. and from in any manner interfering therewith pending the action, except to properly indorse and return the same to the plaintiff, and "from in any manner dealing with the assets or property of the Bankers' Life Insurance Company by virtue of their holding such certificates of stock.

Whether the formation of a corporation for the purpose of controlling or managing and operating another corporation through the own--

ership of a majority of its stock, as distinguished from leasing or pur-
chasing its property and franchises, is valid under the laws of New
Jersey, is a question not presented for decision on this appeal; but
we cannot refrain from observing that the propriety or necessity there-
for is not apparent. If, however, that be lawful under the statutes of
New Jersey, and not opposed to our public policy—which it is unnec-
essary at this time to decide—it does not follow, as contended by the
learned counsel for the appellants, that the corporation thus organized
to control and manage another may delegate to individuals, not its di-
rectors or officers, exclusive power to manage and control the other
corporation for a period of five years, leaving its directors, through
whom the law contemplates that the corporation shall exercise its pow-
ers, virtually without any function to perform after thus delegating
to others all of their powers and duties. The purchase by the plaintiff
of the insurance company's stock was made in December, 1902, from
two individuals, one of whom held 501 shares and the other 125. The
holder of the 125 shares had paid par therefor on the incorporation
of the company in 1899, and the holder of the 501 shares had paid
$120 per share therefor in September, 1902. The company had ac-
cumulated a large surplus, its business was increasing, and it was pay-
ing dividends of 6 per cent. The stock was all purchased by the plain-
tiff at $300 per share. The moving papers tend to show that this was
more than its value, and that the purchase was induced by false and
fraudulent representations of the individual defendants Voorhees and
Stokes concerning its value, and in furtherance of a scheme formed by
them with the defendant Sherer and the individuals from whom the
stock was purchased to control the management of the insurance com-
pany for the benefit of the individual defendants, their relatives and
friends. It does not appear but that the vendors of this stock had the
absolute right to sell it unconditionally, or that in giving the option
thereon pursuant to which the transfer was subsequently made they
imposed any conditions; but after the execution of a valid option for
the sale of the stock and the payment of $30,000 thereon, but before
the actual delivery of the stock, the board of directors of the insurance
company passed a resolution declaring their unalterable opposition to
the transfer of the control of the capital stock to the defendant Voor-
hees, or anybody else of whom they had no previous knowledge and
directing that the resolution be communicated to the parties interested,
that the attorney for the company take such steps as might be necessary
to protect its interests in the premises, and that the chairman explain
to the parties interested that the board was opposed to the transfer of
the stock previous to the submission to it of the names of the purchasers
in order to enable it to decide whether the transfer was for the inter-
ests of the company. Upon the presentation of this resolution to
Voorhees and the investment company, negotiations were opened be-
tween the parties apparently with a view to averting friction, and not
in recognition of the right of the board of directors of the insurance
company to interfere with a sale of the stock. As a result of these nego-
tiations, a voting trust agreement was signed by the plaintiff and the
individual defendants as voting trustees. It purports to be an agree-
ment between the stockholders of the insurance company who should

become parties thereto and the three trustees, concerning whom it is recited that one had been chosen to represent the majority and one the minority of the stockholders of the insurance company, and that the other was selected by these two. It contains no reference to the insurance company, or recital that it had become a stockholder, or any condition or understanding that such agreement should be executed. It purports to give to these trustees exclusively the voting power on the stock of such stockholders as should subscribe thereto for the period of five years, and provides that the stock shall be transferred upon the books of the company to the names of the trustees, who were to give the stockholders certificates showing that at the expiration of the five years they would be entitled to have issued to them the same number of shares and to any dividends declared in the meantime. The trustees covenanted to "exercise their best judgment from time to time to select suitable directors, to the end that the affairs of the company shall be properly managed."

There must be a trial of the issues, and therefore we should, in reviewing the propriety of issuing the temporary injunction, refrain as far as possible from expressing views that may be regarded as controlling on the final disposition of the case; and yet, in view of the many contentions of the appellants strenuously urged both upon the argument and in the points, we cannot refrain from making some observations that may have a bearing on the merits. The defendants contend that the voting trust agreement was made pursuant to the provisions of section 20 of the general corporation law (Laws 1892, p. 1807, c. 687), and that it is therefore valid and irrevocable. Doubtless a voting trust agreement made pursuant to that statute would ordinarily be valid; but on the question of whether it might not be revocable, in many instances depending on the facts, we refrain from expressing an opinion at this time. The circumstances here presented, however, appear to us to be extraordinary. If it should become necessary, the statute may be declared inapplicable to a corporation organized, as the plaintiff was, to control the operations of another through ownership of the majority of the stock; for otherwise the directors would be divested of any voice in the affairs of the corporation which they were elected to manage.

The appellants also contend that they have fully rebutted all charges of fraud and bad faith. The defendant Sherer, at the time of the purchase of the stock by the plaintiff, owned a single share of stock in the insurance company, and was director thereof, but, so far as appears, he had no interest in the investment company. The defendant Voorhees held 5 of the total issue of 2,400 shares of the capital stock of the investment company, for which the plaintiff claims he never paid. The defendant Stokes was a director, and held 100 shares of the investment company capital stock, which it is claimed was given to him for his good will and friendship, owing to his influence politically; but this he denies, and claims that full consideration was paid for the stock. After the making of the voting trust agreement, Stokes and Voorhees each purchased one share of the capital stock of the insurance company to qualify them as directors, and they were elected directors, and Voorhees, against whose control in the management of the

corporation the board of directors had recently protested, was elected
president. The moving papers tend to show that the other directors
of the investment company were political or personal friends of Voor-
hees or Stokes, and that their action was dominated and controlled
by them; that neither of them had had any experience or possessed
any special qualification for conducting an insurance business; that
during the succeeding year the volume of the business of the insurance
company materially fell off, its surplus largely decreased, and its ex-
penses largely increased, and it ceased to pay dividends; that an at-
tempt was made to have the stockholders ratify the action of the board
of directors in creating the voting trust agreement by having the stock-
holders convened on call of the chair, after an adjournment of the
annual meeting subject to the call of the chair, without any special no-
tice that this question was to be considered; and that, although the
minutes show the adoption of a resolution of ratification, it was not in
fact adopted and the action was not in fact taken by the requisite stock
vote, which, however, is denied by the opposing affidavits. It thus
appears without controversy that by the voting trust agreement the
management of the affairs of the investment company have been vir-
tually turned over to the voting trustees, who have but little personal
interest therein or in the success of the insurance company. Even
the uncontroverted facts disclose an extraordinary state of circum-
stances, and slight evidence of bad faith may be sufficient to justify a
finding that the execution of the voting trust agreement was procured
by fraud.

It is claimed that the injunction order violates the provisions of sec-
tion 56 of the insurance law (Laws 1892, p. 1958, c. 690), which pro-
vides that:

"No order, judgment, or decree providing for an accounting or enjoining,
restraining or interfering with the prosecution of the business of any do-
mestic insurance corporation or appointed a temporary or permanent receiver
thereof shall be made or granted otherwise than upon the application of the
attorney general, on his own motion or after his approval of a request in
writing therefor of the superintendent of insurance, except in an action by a
judgment creditor or proceedings supplementary to execution."

So far as the voting trustees are individual stockholders of the in-
surance company, they are not enjoined from voting, nor are they
enjoined from acting as officers of the insurance company. They
are merely enjoined from taking any further action with reference to
voting upon the stock of the plaintiff, or attempting further to control
or influence the action of the insurance company by virtue of the trust
agreement. The plaintiff is concededly the owner of this stock. It
makes out a prima facie case showing that these individual defendants
have no right to represent it further in voting on the stock. If the
plaintiff prefers that its stock should not be voted upon at all, rather
than that these individual defendants should vote it, that would seem to
be its privilege as the owner; and, if the individual defendants, moved
by a commendable desire to protect the plaintiff, are solicitous lest the
minority take advantage of the situation and control the next election,
they are at liberty under the order of the court to return the stock to

the plaintiff, its rightful owner, who may, in that event, take part in the election of officers.

It follows that the order should be affirmed, with $10 costs and disbursements.

All concur, except VAN BRUNT, P. J., and INGRAHAM, J., who dissent.