IRVINE J. KITTINGER, Plaintiff, *v.* CHURCHILL EVANGELISTIC ASSOCIATION, INC., and Others, Defendants.

Supreme Court, Erie County, April 25, 1934.

*F. Paul Norton* [*William C. Carroll* of counsel], for the plaintiff.

*Coatsworth & Diebold* [*E. L. Jung* and *Ralph K. Robertson* of counsel], for the defendants Churchill Evangelistic Association, Inc., and another.

*Ladd, Garono & Jaeckle* [*Edwin F. Jaeckle* of counsel], for the defendant Hiram W. Deyo.

*John J. Sullivan,* for the defendant D. F. Churchill.

HARRIS, J. The complaint herein prays for judgment that the court construe, ascertain and determine whether or not an alleged voting trust agreement therein referred to is valid, legal and subsisting, and if so, the rights, powers and duties of the trustees thereunder, and that the plaintiff be determined to be a voting trustee under such agreement. The relief sought is in the form of a declaratory judgment.

Prior to the trial of this action, the defendant association moved at Special Term for a dismissal of the plaintiff's complaint on the ground that the plaintiff had no capacity to sue. Favorable relief on such motion was granted at Special Term but on appeal, the order of the Special Term dismissing the complaint was set aside (239 App. Div. 253). Following the determination of the Appellate Division in favor of the plaintiff on the question of capacity to sue, the action was brought on for trial before the Hon. George E. Pierce, official referee. The testimony was transcribed, proposed findings were submitted and briefs were filed, but the learned official referee passed from this life while he had under consideration the merits of this action. Following his death, the parties to the action stipulated that this court should determine the issues herein with the same force and effect as if this court had heard the testimony.

The court has read the stenographer's minutes as taken before the official referee and has listened to oral argument by interested counsel. Answers herein have been interposed by the defendants Churchill Evangelistic Association, Inc., Clinton H. Churchill and Hiram W. Deyo, while the other defendant, D. F. Churchill, has not answered.

The testimony before me establishes to my satisfaction the following facts:

Previous to the incorporation of the defendant association, which incorporation occurred on or about April 12, 1920, plaintiff, the defendant Clinton H. Churchill and other persons became interested in a plan to conduct in the city of Buffalo and its vicinity the work of evangelistic Christianity. With the evident

desire to work to advantage, those associated in such work decided to form a corporation. One would think that, in form, such corporation would follow the statutes providing for the incorporation of religious bodies, but, instead of this, there was organized under the Stock Corporation Law of this State the Churchill Evangelistic Association, Inc., one of the defendants herein.

The original proposed certificate of such corporate defendant contained a provision to the effect that there should be no profits taken by the stockholders, but that profits and like increment were to be used to further the work of the defendant corporation. The Secretary of State refused to receive and to approve the certificate so long as it contained the provision in reference to the foregoing of dividends and profits by stockholders. Such provision in reference to dividends and profits was stricken from the certificate and the certificate was then approved. Subsequently and at the first meeting of the stockholders, by-laws were approved which contained provisions similar to that originally offered in the certificate of incorporation in reference to profits and dividends.

The corporation proceeded with its work in the field of religion, established places of meeting and of worship, received adherents in the manner in which religious bodies usually receive members. The corporate defendant also engaged in transactions similar to those of a business institution in that it took title to and transferred real estate, made contracts in reference to radio broadcasting and controlled a broadcasting station at one time. Its work became well known throughout at least the eastern part of the United States.

The certificate of incorporation provided for 100 shares of capital stock, and under date of September 22, 1920, the original issue of such 100 shares was made as follows: To the plaintiff herein fifty shares, represented by certificate No. 1; to the defendant Clinton H. Churchill forty-nine shares, represented by certificate No. 3, and to the wife of said defendant Clinton H. Churchill, one Sarah H. Churchill, one share, represented by certificate No. 2. The work of the evangelistic association and its activities flourished and increased.

Under date of November 5, 1924, there came into existence the so-called voting trust agreement which is the subject of litigation in this action. Such agreement was signed by all of the stockholders and the therein named trustees and is as follows:

"This agreement entered into this 5th day of November, 1924, by and between Clinton H. Churchill, Sarah H. Churchill and Irvine J. Kittinger, all of Buffalo, New York, the holders of all of the capital stock of The Churchill Evangelistic Association,

Inc., in the amounts set opposite their respective names, hereinafter mentioned and referred to as stockholders, parties of the first part, and Clinton H. Churchill and Irvine J. Kittinger of Buffalo, New York, and Hiram W. Deyo of New York City, N. Y., hereinafter mentioned and referred to as the trustees, parties of the second part:

" WITNESSETH:

" WHEREAS, The Churchill Evangelistic Association, Inc., is organized for the purpose of promoting evangelistic work and to further the preaching of the Gospel; and

" WHEREAS, the parties of the first part acquired and held their stock only as trustees to further the work of the Association and not for their own private gain; and

" WHEREAS, it is the sense of the parties hereto that the Association will better accomplish its purpose if all its stock were placed in a formal voting trust with trustees devoted to the work.

" *Now therefore,* it is hereby agreed that in consideration of the foregoing and of the mutual promises and covenants herein contained, the parties hereto do hereby covenant and agree as follows:

" 1. That said parties of the first part shall assign and deliver their respective stock certificates to the trustees who shall cause the stock represented thereby to be transferred to themselves as voting trustees or their successors in office on the books of the corporation.

" 2. The voting trust hereby declared and created shall continue for the full term of ten years from the date hereof and throughout such period the trustees shall have the exclusive right to vote upon such stock or to give written consents in lieu of voting thereon, in person or by proxy, at any and all meetings of the stockholders of said corporation, for whatsoever purpose called or held, and in any and all proceedings, whether at meetings of the stockholders or otherwise, wherein the vote or written consent of stockholders may be required or authorized by law.

" 3. At the expiration of the term of the trust hereby created, the trustees then in office are hereby authorized and empowered to make a new voting trust agreement for a further term and deposit all of the stock of the association thereunder, and the trustees in office at the expiration of the term of said renewal trust and of any subsequent renewal thereof are hereby authorized and empowered to do likewise. The trustees in office at the expiration of this trust or the expiration of any renewal thereof are hereby authorized and empowered to make any other disposition of the stock that seems to them to be for the best interest of the Associa-

tion and they are hereby given complete discretion in the matter and their power hereby granted is not limited or abridged by anything hereinbefore contained.

" 4. A majority of the trustees may act or vote in any manner in which the trustees are authorized to act or vote.

" 5. Upon the death, resignation or incapacity of any trustee, his successor for the remainder of the term of this trust shall be nominated by the surviving or remaining trustees and appointed by the Board of Directors of The Churchill Evangelistic Association, Inc.

" 6. The trustees will use their best judgment in voting upon the stock held by them but they assume no responsibility for the consequences of any vote cast or consent given by them in good faith and in the absence of gross negligence.

" In witness whereof, we have made and subscribed this agreement in triplicate this 5th day of November, 1924.

(Signed)      " CLINTON H. CHURCHILL,
IRVINE J. KITTINGER,
SARAH H. CHURCHILL,
     " *Stockholders.*

" CLINTON H. CHURCHILL,
IRVINE J. KITTINGER,
H. W. DEYO,
     " *Trustees.*
     " (Duly verified.)"

Prior to the creation of such instrument and subsequent thereto, all of the transactions of the defendant corporation which had to do with its commercial aspects and which had to do with meetings were handled by means of resolutions and other necessary acts in the same manner as such transactions are handled and performed by and on behalf of stock corporations engaged in business, except that some meetings were opened and closed with prayer.

Time passed. Apparently, difficulties in internal management and in regard to the concept of the work of the corporation created differences between Mr. Kittinger and Mr. Clinton H. Churchill. As the evangelistic work spread and broadcasting by radio became more a factor in the work, contracts and engagements were made that represented most substantial amounts of money and this branch of the work led to considerable argument as to the wisdom of having the same as a business venture. The radio work led to other litigation which is not the subject of this action but which may be a reason for some of the ill-feeling which developed contemporaneous with such transactions and with such litigation.

During all this time the plaintiff was a director and a member of the executive board of the corporate defendant.

Under date of February 21, 1930, the plaintiff wrote a letter as follows:

"CHURCHILL EVANGELISTIC ASSOCIATION,
"1420 Main Street,
"Buffalo, New York.

"*February* 21st, 1930.

"GENTLEMEN: I wish to herewith tender my resignation as Treasurer and Trustee of the Churchill Evangelistic Association, feeling that the affairs of this body should be in the hands of someone who can take a more active part in the growing business demands of this Association, and be in closer touch with the management                    Very truly yours,
"(Signed)      IRVINE J. KITTINGER."

On the receipt of such letter and at a regular meeting of the executive committee of the board of directors held April 25, 1930, a resolution was passed to the effect that the resignation of the plaintiff be accepted, and thereon and under date of April 25, 1930, a letter, of which the following is a copy, was sent the plaintiff by the secretary of the defendant corporation:

"*April* 25, 1930.

"Mr. IRVINE J. KITTINGER,
"1893 Elmwood Avenue,
"Buffalo, N. Y.

"Dear Mr. KITTINGER: At the meeting of the Executive Committee of the Board of Directors of this Association, held this evening, your resignation as treasurer and also as a trustee of this Association was presented and accepted.

"The members of the Executive Committee desire me to assure you of their appreciation of all that you have done for our Association, and of their regret that you have resigned.

"Sincerely yours,
"(Signed)      R. P. LENTZ, *Secretary.*"

Following such action of the executive committee, Mr. Charles Diebold was elected treasurer of the association and a member of its executive committee, and on the nomination of defendants Clinton H. Churchill and Hiram W. Deyo one DeForrest F. Churchill was elected as trustee under the voting trust agreement. It is this election of the said DeForrest F. Churchill as trustee that is attacked by the plaintiff in this action when he asks that if it is held that the voting trust agreement is valid, he be found to be a voting trustee thereunder.

Under date of February 25, 1930, the plaintiff wrote the defendant Clinton H. Churchill a letter, of which, in so far as the contents are pertinent to this lawsuit, the following is a copy:

" Dear CLINTON: * * * As I mentioned to you last week, I felt it would be better for all if I severed my connection with the Tabernacle entirely and since that time I have thought it thru in every way and have not changed my decision. This does not mean that I am not interested in what you are doing and accomplishing for I am and want to continue to support your work, but I have made up my mind it will be best for all if I am eliminated.

" We all have implicit confidence in Charles Diebold, Jr., and would like to suggest that he be put in my place, as I mentioned to him as well as Mr. Deyo when he was here Sunday.

" There is no reason why publicity should be given this matter right at this time in view of the Broadcasting Company's changes and it would be agreeable to me to have acceptance of this resignation deferred for a month if you think advisable. As long as I am connected with the B. B. C. I can assure you of my fullest cooperation.

" Sincerely yours,
" (Signed)     IRVINE J. KITTINGER."

On April 21, 1930, the plaintiff wrote another letter to the defendant Clinton H. Churchill, which is as follows:

" Rev. CLINTON H. CHURCHILL,
" Churchill Tabernacle,
" 1420 Main Street,
" Buffalo, N. Y.

" My dear Sir: I was surprised when reading your notices in yesterday's Sunday Courier Express, to see that you used my name as Treasurer as well as Director of The Churchill Evangelistic Association. In doing this I feel that you overstepped yourself — inasmuch as my resignation has been in your hands nearly two months.

" I have on several occasions, thru Mr. Deyo, requested that this be acted upon. Kindly see that action is taken without further delay; also refrain from using my name as being connected with The Churchill Association — otherwise I will be obliged to issue a statement, which I would regret to do.

" Yours very truly,
" (Signed)     IRVINE J. KITTINGER."

Since the receipt of his letter of resignation by the executive committee, the plaintiff has not in any way participated in any

of the business meetings or affairs of the defendant association except in so far as he engaged or was engaged in litigation on various matters in which his interests apparently were opposed to those of the association.

This action was commenced by the service of a summons and complaint, which summons was dated March 29, 1933, and served about that time. The joint answer of the defendants Churchill Evangelistic Association, Inc., and Clinton H. Churchill set forth as the contention of such defendants that the voting trust agreement is valid and that the resignation of the plaintiff included his resignation as a voting trustee. The answer of the defendant Hiram W. Deyo, which was not filed until the action was submitted to this court on stipulation as above referred to, in substance, asks the court to construe and determine whether the voting trust agreement is valid and legal, and if it is determined to be valid and legal, then that the court state the rights, powers and duties of such defendant Deyo and the other trustees thereunder, and if it is determined to be invalid as to any provisions therein contained, that the same be so adjudged, determined and declared.

The position taken by the plaintiff on trial is that, due to the contents of paragraph 3 of the voting trust agreement, such agreement is invalid and illegal as being contrary to the provisions of the statute and against public policy; that when he resigned he did not intend to and did not resign as a voting trustee but as a director of the defendant association.

The questions to be disposed of in this litigation are as follows:

1. Is the voting trust agreement above recited valid in whole, in part or not at all?

2. If it is valid, is the plaintiff still a voting trustee under such agreement?

3. If it is declared invalid in part, in so far as paragraph 3 thereof is concerned, should the court grant a declaratory judgment to such effect and therein state the rights, duties and obligations of the voting trustees and of the original stockholders who created such trust, as of the time when the term of ten years (as stated in paragraph 2 of said voting trust agreement) expires?

The court will first discuss the question as to the validity of the voting trust agreement. A voting trust agreement created under section 50 of the Stock Corporation Law may not exceed a period of ten years and if it does exceed that length of term, then the agreement is invalid as against public policy. On this question the plaintiff contends that paragraph 3 of the voting trust agreement is an inseparable part of the agreement and that the remainder of the agreement, including paragraph 2, must be read in connection

with such paragraph 3. If this is so, then the voting trust agreement in and of itself is invalid as providing for a term of more than ten years, but this court is of the opinion that paragraph 3 is a separate provision by means of which the parties thereto hope to be able to continue the control of the stock after the expiration of ten years from the date thereof. In drawing such paragraph 3, it was kept separate from paragraph 2. Paragraph 2, if it were not for paragraph 3, would be valid under section 50 of the Stock Corporation Law. The care taken in separating these two paragraphs leads this court to the conclusion that, with some thought in their minds that such paragraph 3 would be invalid, the creators of such voting trust agreement made paragraph 3 a separate paragraph so as not to affect the validity of paragraph 2 if paragraph 3 were an invalid provision. With this in mind, this court holds that paragraph 2 establishes the validity of the voting trust agreement and that such voting trust agreement is valid, at least, until the expiration of ten years from the date thereof.

On the question as to whether or not the plaintiff is a voting trustee under such agreement, the plaintiff claims that when, in his letter of February 21, 1930, above set forth, he used the term " trustee " he meant that term to mean " director." This contention of the plaintiff does not sound well to the court when it is borne in mind that at the time of his resignation, he occupied the office of director and the position of voting trustee; that when the voting trust agreement was established, the term " trustee " was used by him in the signature thereof; that he is a most intelligent and well-known man of affairs who certainly must have been able to distinguish as to which office he was resigning. In addition to this, his letter to Mr. Clinton H. Churchill of February 25, 1930, above quoted in part, shows that he intended to sever all official connections with the enterprise represented by the association. This leads to the conclusion that although the voting trust agreement is valid for a period of ten years from the date thereof, plaintiff herein ceased to be a voting trustee on the acceptance of his resignation by the executive committee of the board of directors of the association.

Now comes the question as to the validity of paragraph 3 of the voting trust agreement and as to whether this court should or should not grant judgment declaring such paragraph to be invalid if it is invalid. The defendants Churchill Evangelistic Association, Inc., and Clinton H. Churchill contend that it does not lie with this court in this action to pass on the question of the validity or invalidity of paragraph 3 of the voting trust agreement and that if this court decides it has the power to pass upon such

question, these two defendants claim that paragraph 3 should be construed as a valid act. The basis of their contention that the court should not at this time pass on the validity of such paragraph by means of a declaratory judgment is that there is no present question at issue in reference to the same and that the plaintiff, at the expiration of the ten years provided for in paragraph 2 of such agreement, could then proceed with some other recognized type of action to have it decided as to whether or not such paragraph 3 is invalid and if it is not, what rights he has, if any, in the fifty shares of stock, the voting power of which he assigned by such voting trust agreement to the trustees therein nominated. In support of their contention, these two defendants raise a most novel and interesting argument. They claim that although, in form, the defendant Churchill Evangelistic Association Inc., is a stock corporation, and although it was organized under the laws governing the organization and incorporation of stock corporations, such corporation is really a religious corporation. They further claim in view of the history of the enterprise prior to its incorporation, and in view of the language of the certificate of incorporation, the effort to avoid the division of profits and dividends among stockholders and the preamble to the voting trust agreement, which preamble recites as follows:

" WITNESSETH:

" WHEREAS, The Churchill Evangelistic Association, Inc., is organized for the purpose of promoting evangelistic work and to further the preaching of the gospel; and

" WHEREAS, the parties of the first part acquired and held their stock only as trustees to further the work of the Association and not for their own private gain; and " it must be concluded that the Churchill Evangelistic Association, Inc., is not a stock corporation but a religious body. The court cannot agree with this view. At the time of its organization, the promoters of the Churchill Evangelistic Association, Inc., could have sought incorporation either under the Stock Corporation Law, the Membership Corporations Law or the Religious Corporations Law. For some reason best known to themselves they chose the Stock Corporation Law under which to organize. Having done so, they are bound by the provisions of that law. If this court were to venture a thought on such reasons, the stock corporation form was selected so as to provide control by the original stockholders of the work of the venture, which control may not have been obtained by organizing a membership or religious corporation. As has been hereinbefore indicated, all of the business transactions of the corporation were carried on in the form required

by the Stock Corporation Law and the Business Corporations Law of this State.

It is well established that stockholders of stock corporations may not grant irrevocable proxies for stock or irrevocable powers of attorney. This is due to the rule that the public policy of the State is established by the provisions of section 50 of the Stock Corporation Law to the effect that the voting power of stock in a stock corporation may not be parted with by the stockholder for a period longer than ten years and only in accordance with the provisions of such section. (General Corp. Law, § 19; Stock Corp. Law, § 47; *Matter of Germicide Co.*, 65 Hun, 606; *Randall & Sons, Inc.*, v. *Lucke*, 123 Misc. 5.) With this in mind, the court must find that paragraph 3 is invalid as contravening the statutes and thus being against public policy. The contention of the defendants Churchill Evangelistic Association, Inc., and Clinton H. Churchill that this court should not now, by declaratory judgment, dispose of the question of the validity or invalidity of paragraph 3 of the voting trust agreement cannot be sustained. The status of the voting trustees is fixed by such agreement. They are entitled to know and stockholders are entitled to know whether, on the approach of the 5th day of November, 1934, which is comparatively near, stock covered by the voting trust agreement should be controlled by voting trustees or by the stockholders who have established such agreement. The opinion of this court that such paragraph 3 is invalid necessarily leads to the conclusion then that the persons who signed the voting trust agreement are entitled, at the expiration of ten years from the date thereof, to have reassigned to them and reissued to them, stock in the defendant association in the proportions in which they assigned the voting power of such stock under the voting trust agreement.

There is a claim on the part of the defendants Churchill Evangelistic Association, Inc., and Clinton H. Churchill that when such stock was originally issued to the plaintiff, the defendant Clinton H. Churchill and Mrs. Churchill each received the same in trust for their fellow promoters. This may be so, but this question is not one for decision in this lawsuit. If any persons claim to be owners of any shares of stock, either those held by the plaintiff or the defendant Clinton H. Churchill, or held by the representatives of Sarah H. Churchill, then such persons may in other litigation seek to establish their right to be regarded as joint owners of such stock. On the face of the record and in so far as this lawsuit is concerned, the court is of the opinion that after the expiration of the term of ten years from the 5th day of November, 1924, the plaintiff will continue to be the owner of fifty shares of

stock, the defendant Clinton H. Churchill will continue to be the owner of forty-nine shares of stock and the representatives of Sarah H. Churchill will continue to be the owners of one share of the stock of the corporation, all these holdings free of the effect of the voting trust agreement.

In view of the foregoing, the parties hereto may have a declaratory judgment which shall provide as follows:

1. That the voting trust agreement, dated November 5, 1924, is valid for a period of ten years from the date thereof.

2. That the plaintiff is not a voting trustee under such agreement.

3. That such voting trust agreement will cease to be of force or effect at the expiration of ten years from the date thereof.

4. That at the expiration of such ten years, the ownership of the stock in the corporation will continue to be as follows: Irvine J. Kittinger, fifty shares; Clinton H. Churchill, forty-nine shares; representatives of Sarah H. Churchill, one share, and such persons shall each be entitled to have issued to himself or herself a certificate of stock for such number of shares.