H. M. BYLLESBY AND COMPANY, a corporation of the State of Delaware,

vs.

GEORGE F. DORIOT, HENRY E. TREIDE and WALSTON B. SOUTHWICK, as Voting Trustees under a Voting Trust Agreement dated November 9, 1936, in respect of certain shares of Common Stock, Series B, of Standard Power and Light Corporation, a corporation of the State of Delaware.

*New Castle, April 24, 1940.*

*Caleb S. Layton*, of the firm of Richards, Layton & Finger, for complainant.

*Ivan Culbertson*, and *Spencer Pinkham*, of New York City, for defendants.

THE VICE-CHANCELLOR: Complainant, a Delaware corporation, is the sole depositing stockholder under a voting trust agreement. Defendants are the voting trustees. The agreement bears date November 9, 1936, and was executed by complainant and three individuals who became the original trustees and were defendants' predecessors in this capacity. Complainant now sues to terminate the trust on several grounds, the principal of which are: that it is the settlor and sole beneficiary of the trust and as such has

elected to and is empowered to effect a revocation; and that the purpose of the trust has failed and in such case the trust may be terminated. Defendants vigorously oppose revocation. They urge that complainant is not the sole beneficiary of the trust and that it may not be revoked without the consent of other persons who have an interest in the trust or its continuance; that the purpose of the trust which appears from the agreement has not failed and no other purpose may be shown or is relevant.

For some years complainant has been engaged in the business of investment banking. In 1936 it owned 75 per cent. of the outstanding shares of common stock, Series B, of Standard Power and Light Corporation, another Delaware corporation which I shall refer to as Standard. This stock held by complainant had voting rights which enabled the holder, through Standard, to control the election of a majority of the board of directors of Standard Gas and Electric Company, the dominant corporation in one of the largest electric utility systems of the United States.

Standard is a "holding company" within the *Public Utility Holding Company Act of* 1935, 15 *U. S. C. Chap.* 2C. 15 *U. S. C. A.* §§ 79–79z—6. Any company which directly or indirectly owns, controls, or holds with power to vote, ten per cent. or more of the outstanding voting securities of a public-utility holding company becomes itself a "holding company" within the statute, unless declared otherwise by the Securities and Exchange Commission. Thus complainant, on account of its ownership of voting securities of Standard was subject to the provisions of the act. Complainant deemed that the consequences of being such a "holding company" would render unlawful or at least seriously handicap its business of investment banking. It was advised that by the creation of the voting trust with which we are here concerned, it would lawfully avoid such consequences. Accordingly, at a meeting of complainant's directors on November 9, 1936, resolutions were adopted that

complainant should enter into the voting trust agreement, deposit its shares of stock, and that thereafter application should be made to the Securities and Exchange Commission for an order exempting it from the provisions of the act.

The agreement states that it is "by and between H. M. Byllesby and Company * * * and such other stockholders of Standard * . * * as may from time to time deposit stock under this agreement * * * (all of whom are hereinafter sometimes collectively called 'the Depositing Stockholders') * * * parties of the first part"; and three individuals referred to as trustees or voting trustees, parties of the second part. In substance, the agreement provides that the voting trustees shall, until the termination of the agreement, hold shares of the voting stock of Standard which are deposited with them and shall issue voting trust certificates therefor; that the certificate holders shall be entitled to dividends and distributions, less expenses and taxes paid on account of the shares of Standard; that the trustees shall have full power to vote "in their unrestricted discretion" the shares deposited with them; that the trustees agree to exercise the powers and perform the duties as set forth in the agreement "according to their best judgment." It makes appropriate provisions for incidental matters which relate to the administration or functioning of the trust.

There is no specific reservation of a power to revoke, but Article 17 relating to termination reads:

"17. This Agreement shall terminate at five o'clock, Central Standard Time, in the afternoon of November 8, 1946, without notice by or action of the Trustees, unless sooner terminated in accordance with law."

Article 22 makes restrictions which are highly significant in this case:

"22. Anything herein to the contrary notwithstanding, no shares of stock, other than shares owned by or standing in the name of Byllesby, shall be deposited pursuant to the terms of this Agreement or become or be subject to the provisions hereof or entitled to the benefits hereof, nor shall any holder

of stock other than Byllesby in any manner become a party to this Agreement, unless in any such case Byllesby shall give its express permission therefor by instrument or instruments in writing delivered to the Trustees."

Complainant and the original trustees executed the agreement and the former deposited its shares of Standard. No other shareholder has executed the agreement or sought complainant's permission, pursuant to Article 22, to deposit shares.

After depositing the stock, complainant made application to the Securities and Exchange Commission for an order declaring it not to be a "holding company" under the act or in the alternative, that the Commission should find that it was exempt from the provisions of the act. This application is dated the same day as the voting trust agreement and a complete copy of the agreement is annexed to it. The Commission rendered an opinion on January 15, 1940, in which it held that complainant is a "holding company" within the act, and that the application for exemption could not be granted because it did not appear that the company did not have a controlling influence over the management or policies of Standard, as defined in the act.

In the opinion it is stated that if complainant owned the shares absolutely, it would exercise a "controlling influence," the absence of which is necessary to warrant exemption under the act. The Commission then considered whether the creation of the voting trust had destroyed the controlling influence otherwise existing. It said:

"We are doubtful that a voting trust (except possibly a voting trust established solely for the purpose of liquidation) can ever operate effectively to insulate the control which ownership of a block of stock carries. But apart from that fact, it is clear that a voting trust in which the voting trustees are not completely independent of the depositors does not operate to insulate control. Serious question exists as to whether the voting trust agreement in this case permits the voting trustees to act independently of the wishes of Byllesby. As we have previously pointed out, the voting trust agreement contains a provision which enables Byllesby to prevent the deposit of Common Stock, Series B, held by other persons. To date no other stockholders have

deposited under the voting trust agreement. Byllesby is, therefore, the sole beneficiary of the trust, and the trustees are bound to act for Byllesby's benefit. Morever, Byllesby and the voting trustees may terminate the agreement by mutual consent at any time. 25/ In fact it was admitted that one of the principal seasons for the provisions preventing deposits without Byllesby's consent was to make possible dissolution of the trust should circumstances make it desirable."

Note 25, referred to in the above quotation, is as follows:

"25./ It is well settled that all parties in. interest may terminate a trust. *Helvering v. Helmholz,* 296 *U. S.* 93, 97 [56 *S. Ct.* 68, 80 *L. Ed.* 76] (1935) ; *Western Battery & Supply Co. v. Hazlett Storage Battery Co.,* 61 *F.* (2*d*) 220, 231 (*C. C. A.* 8*th,* 1932), *certiorari* denied, 288 *U. S..* 608 [53 *S. Ct.* 399, 77 *L. Ed.* 982] ; *Rowley v. American Trust Co.,* 144 *Va.* 375, 132 *S. E.* 347, 45 *A. L. R.* 738 (1926) ; *O'Brien v. Holden,* 104 *Vt.* 338, 160 *A.* 192 (1932) ; *Fredericks v. Near,* 260 *Mich.* 627, 245 *N. W.* 537, 538 (1933); *Riedlin's Guardian v. Cobb,* 222 *Ky.* 654, 1 *S. W.* (2*d*) 1071 (1928). See also annotations in 38 *A. L. R.* 941, 965, and 45 *A L. R.* 743. Several of these authorities indicate that the sole beneficiary may terminate a trust even without the consent of the trustees."

The Commission found that the original voting trustees, because of previous connections and present stockholdings, were not wholly independent of complainant. At the time of the last hearing before the Commission, tne successor voting trustees (defendants in this case) had been in office only a few weeks and had performed no duties as trustees. The Commission held that the facts before it were not sufficient to permit a finding that the new trustees were completely independent of complainant, "the creator of the trust."

Complainant has been allowed by the Commission a short time in which to adjust its business to the situation, and the application is treated as pending until the entry of a final order which has not yet been made. Complainant wrote defendants, the trustees, stating that the opinion of the Securities and Exchange Commission rendered impossible the purpose for which the voting trust was created; that if declared to be a "holding company," complainant

could not continue in business; that in order to remove complainant from holding company status, it would be necessary to repossess the shares deposited with the trustees and dispose of them within the period allowed by the Commission. Complainant then requested the trustees either to resign and appoint as successors persons who might be designated by a purchaser of complainant's interest in the shares, or that the trustees join with complainant in dissolving the voting trust. Upon defendants refusal to comply, complainant brought this suit to revoke the trust, tendering itself ready to perform all things required by the agreement to be done by it upon termination.

At the hearing before this court complainant also offered evidence to show that it would be impossible or at least disadvantageous for it to sell the voting trust certificates rather than the stock itself which is subject to the voting trust.

The important question is: can complainant alone terminate the trust? Authorities are cited for the proposition that where the settlor is the sole beneficiary and is not under an incapacity, he can compel the termination of the trust which he has created. *O'Brien v. Holden,* 104 *Vt.* 338, 160 *A.* 192; *Vlahos v. Andrews,* 362 *Ill.* 593, 1 *N. E.* 2d 59; *Long v. Tradesmen's Nat. Bank & Trust Co.,* 108 *Pa. Super.* 363, 165 *A.* 56, (excepting trusts for protection of settlor against intemperance or vicious habits or spendthrifts trusts); *Stephens v. Moore,* 298 *Mo.* 215, 249 *S. W.* 601; *Brillhart v. Mish,* 99 *Md.* 447, 58 *A.* 28; *Restatement of the Law of Trusts, Section* 339; 3 *Scott on Trusts, Section* 339; 65 *C. J. page* 343. This precise question has not been considered in any Delaware case which I have found. The case of *Crumlish v. Security Trust & Safe Deposit Company,* 8 *Del. Ch.* 375, 68 *A.* 388, in which the settlor, a married woman, sought to revoke a voluntary settlement previously made for the purpose of disabling herself from disposing of her property while under the influence of her husband, was argued and

decided on other grounds; and it appears likely that, because of a contingent gift to her children, the settlor was not considered to be the sole beneficiary.

There is no occasion here to express any view as to trusts created for the purpose of protecting a settlor from his or her own improvidence, or that of a spouse. With the possible exception of such cases, no good reason appears why a court should insist upon the continuance of a trust, where the person who has created it with respect to his own property and who alone is beneficially interested in it afterwards changes his mind and desires to terminate it.

Generally speaking, a voting trust is a trust in the accepted equitable sense and is subject to the principles which regulate the administration of trusts, *Chandler v. Bellanca Aircraft Corp., et al.*, 19 *Del. Ch.* 57, 67, 162 *A.* 63. *Section* 18 of the *Delaware Corporation Law, Rev. Code of Del. 1935, Section* 2050, which authorizes the creation of voting trusts, does not prescribe that such a trust shall be irrevocable, nor can there be found in the statute any basis for the contention that the principles governing the revocability of other express trusts should not apply to voting trusts. That these principles are usually applicable to voting trusts is indicated by text-writers: 5 *Fletcher on Corporations, Section* 2087 and *Machen on Corporations, Section* 1269.

Defendants have cited a single case as a holding that a voting trust may not be revoked by the sole settlor and depositing shareholder: *Knickerbocker Investment Co. v. Voorhees*, 100 *App. Div.* 414, 91 *N. Y. S.* 816; *Id.*, 128 *App. Div.* 639, 112 *N. Y. S.* 842. In the first report, the Appellate Division refrained from expressing an opinion as to whether or not a voting trust under the New York statute was revocable, and confined its consideration to issues whether the agreement was void on its face or for fraud or whether the trustees had been guilty of conduct justifying a rescission. Certain language in the later report indicates that after a hearing before a referee, judgment had been entered

by the trial court upon the referee's report in favor of the defendants. Without the benefit of an opinion or of a statement of the exact issues determined, and the reasons therefor, this case is not regarded as persuasive upon the question raised here.

Defendants urge that the agreement states that it is irrevocable and that therefore it is irrevocable. They refer to the following portion of the first article:

"1. The Depositing Stockholders hereby severally agree irrevocably to assign, transfer and deliver to the Trustees shares of stock in amounts set forth opposite the respective signatures of the Depositing Stockholders to this Agreement; * * *."

As to this it is enough to say that the mere statement in a trust instrument that it shall be irrevocable is not sufficient under authorities above cited to prevent termination by the sole settlor who is the sole beneficiary. However, when the above language is considered in the light of the stated purpose as well as other provisions of the agreement, it would seem an entirely reasonable construction that irrevocability was intended only in the event that "Depositing Stockholders," that is, more than one stockholder, should transfer their shares to the trustees. The only purpose stated in the agreement is contained in the following recital:

"And Whereas the Depositing Stockholders deem it to be to the best interests of the Corporation and themselves that the voting rights and powers held by them as stockholders of the Corporation be united pursuant to the terms of this Agreement and be vested in the Trustees as hereinafter provided; * * *."

Thus, from the agreement alone, we find that it was the uniting and vesting in the trustees of voting powers of more than one stockholder which was deemed to be to the best interest of the corporation and the depositing stockholders. However, under Article 22 complainant effectively reserved the power to prevent this uniting of voting rights. Since no shareholder other than complainant has deposited shares, this uniting of voting rights has never

been accomplished and never could have been, without an affirmative act of complainant. With more than one depositing stockholder, irrevocability is consistent with and in support of the purpose to unite and vest voting rights, and is a usual incident of trusts of this character; but with complainant as the sole depositor, irrevocability in nowise aids this purpose and is hardly consistent with complainant's reservation of full power to prevent the fulfillment of such purpose.

Defendants next urge that complainant is not the sole beneficiary, notwithstanding that it is the sole shareholder who is a party to the agreement and the only depositor of shares, and notwithstanding that Article 22 restricts the benefits of the agreement to shares deposited with complainant's consent. They insist that the agreement itself makes Standard one of the beneficiaries by virtue of the statement in the recital that "the Depositing Stockholders deem it to be to the best interests of the corporation [Standard] and themselves that the voting rights and powers" be united and vested in the trustees. Neither this recital nor any other language of the agreement purports to confer a beneficial interest upon Standard. It is granted no right to enforce the agreement of the trustees to exercise the power to vote, much less to direct the voting. There is a total absence of any provision for duties owing by the trustees to Standard. Let it be assumed that Standard would benefit from the continuance of the trust, that is, from the voting by the trustees "according to their best judgment." Even so, to constitute a person a beneficiary, the settlor must manifest an intention to give him a beneficial interest. *Restatement of the Law of Trusts*, § 127; 1 *Scott on Trusts*, § 127. Unless there be such a manifestation, the fact that a person may incidentally benefit from the performance of the trust does not make him a beneficiary. *Brennen, et al., v. Vogler, et al.,* 174 *Mass.* 272, 54 *N. E.* 556; *Restatement*

*of the Law of Trusts,* § 126; 1 *Scott on Trusts,* § 126. The shares deposited were the absolute property of complainant and the agreement discloses no intent to confer upon Standard a beneficial interest therein.

Nor is there merit in the suggestion that other shareholders who might in the future deposit their shares, are beneficiaries, since under Article 22 none could deposit without complainant's express consent.

Defendants say that they, the trustees, have a beneficial interest because (1) they have title to and possession of the shares and are vested with the right to vote; (2) they have a right to compensation as trustees and also as directors of Standard, having elected two of their number to the board of Standard; (3) their voting right is a thing of value and involves "position, prestige and the possibility of substantial legitimate financial profit" to them; in addition they assert their right to exercise their powers in connection with the business and affairs of a "public utility empire," which they find a task interesting and worthwhile. Surely the holding of bare legal title and custody of the stock certificates do not make defendants beneficiaries of the trust. Nor will a trust be continued for the sole purpose of enabling trustees to earn their compensation. 3 *Scott on Trusts,* § 337; *Restatement of the Law of Trusts,* § 337, *Comment b.* Here, the agreement makes no specific provision for compensation although defendants offered testimony that complainant had entered into some separate contract to pay them each the sum of $1800.00 per year during the life of the voting trust. It is not contended that the voting powers were granted the trustees to the end that they might vote the shares for their own personal benefit. Under this agreement, the advantages and benefits which the trustees may properly derive are purely incidental and manifestly not such as to constitute a beneficial interest designedly conferred.

Thus, complainant as sole settlor and beneficiary is entitled to terminate the trust unless, as defendants contend, it would be inequitable by reason of representations made by complainant to permit it now to revoke. Defendants say that complainant has underwritten securities of corporations in the Standard Gas and Electric group, and that the prospectuses of such securities contain statements concerning the voting trust of such character that purchasers of the securities may have relied upon its continuance. One of such prospectuses, introduced in evidence by defendants, refers to the voting trust agreement as "having a stated expiration date of November 8, 1946"; it also mentions the application to the Securities and Exchange Commission and concludes with a disclaimer of "any admission of the actual existence of effective control" by complainant. There is no showing of reliance upon these statements by anyone. Moreover, such statements, so made, do not seem to me to constitute a representation by complainant that it could not or would not, in any event, terminate this trust.

The agreement gave complainant no right to control and the facts do not show that it has had any practical control of defendants' voting. The trustees are men of high character and had no connection with complainant or the Standard Gas and Electric companies. It appears from the record that these trustees actually have acted independently and that complainant has not attempted to direct them in their administration of the trust.

That the Securities and Exchange Commission was not misled as to the revocability of the agreement, or otherwise, is demonstrated conclusively by the opinion filed by the Commission and particularly the excerpts hereinbefore quoted.

In the absence of representations by complainant, it is unimportant whether some persons thought that the agreement would not be revoked. Reliance by such persons,

if any there were, upon their own erroneous conclusions of law concerning the agreement or assumptions that complainant would not revoke it, could not destroy complainant's power to terminate the agreement. This power it now has.

Under this view of the case, it is unnecessary to consider other asserted grounds of revocability.

A decree accordingly will be advised.