A. F. ADAMS, ALICE E. ADAMS and ALMERA ELECTRIC COMPANY, a Delaware corporation,
Plaintiffs,

*vs.*

CLEARANCE CORPORATION, a Delaware corporation, ALLEN S. CRANE, RANFORD DUNLAP, THEODORE S. GARY, G. L. GRAWOLS, F. S. SPRING, EMMETT SWANSON, E. C. BLOMEYER, C. S. CADWELL, A. E. CARLSON and V. E. CHANEY, said individuals as Voting Trustees of a certain Voting Trust Agreement dated April 1, 1954, covering voting stock of General and Telephone Investments, Inc., GENERAL AND TELEPHONE INVESTMENTS, INC., a Delaware corporation, and R. E. WILLIAMS,
*Defendants.*

*New Castle, September 28, 1955.*

*John Van Brunt, Jr.,* of Killoran & Van Brunt, Wilmington and *Miller Walton,* of Walton, Lantaff, Schroeder, Atkins, Carson & Wahl, Miami, Fla., for plaintiffs.

*Richard F. Corroon,* of Berl, Potter & Anderson, Wilmington and *Thomas R. Mulroy,* of Hopkins, Sutter, Halls, Owen & Mulroy, Chicago, Ill., for corporate defendants.

MARVEL, Vice Chancellor: The individual plaintiffs, Mr. and Mrs. Adams, who are respectively chairman of the board and president of the corporate plaintiff, are also the holders of a majority of the voting stock of such corporation. The plaintiff, Almera Corporation, a Delaware corporation, holds voting control of Clearance Corporation, also a Delaware corporation, which latter corporation controls a third Delaware corporation, namely General and Telephone Investments, Inc. The last named corporation in turn owns most of the issued and outstanding stock of Theodore Gary and Company, a foreign corporation not a party to these proceedings.

The individual defendants other than R. E. Williams are ten of the eleven voting trustees of a voting trust agreement of April 1, 1954, under the terms of which Clearance Corporation deposited its General and Telephone Investments, Inc.,[1] stock in a voting trust for a term of ten years as authorized by § 218 of Title 8, Del.C. The res of this Delaware trust is 6,015 shares of General and represents voting control of General which corporation, as has been noted, controls Theodore Gary and Company.

Gary proposes to merge with General Telephone Corporation, a New York Corporation, and the stockholders of these corporations will meet on September 29th to vote on a plan of merger which has been approved by the directors of both corporations. Gary owns some 600,000 telephones operated in seventeen states and General Telephone Corporation owns almost 2,000,000 telephones which are operated in twenty-one states. The merger, if consummated, will allegedly lead to more efficient telephone service in the areas in which the two systems operate.

Plaintiffs seek a temporary injunction against the voting of the Gary stock controlled by the General voting trust, a form of relief which, if granted, would prevent stockholder approval of the merger recommended by the directors of the merging corporations. Plaintiffs also request a review under § 225 of Title 8, Del.C., of the election of individual defendants as directors and officers of the defendant,

---

1. Hereinafter referred to as "General". A New York corporation, General Telephone Corporation, which seeks to merge with Gary will be referred to by its full name.

General and Telephone Investments, Inc., at meetings held on January 10th and 18th, 1955, but the matter now to be decided is the validity of the so-called General voting trust.

Plaintiffs concede that A. F. Adams, one of the named trustees, signed the trust agreement of April 1, 1954, but Mr. Adams alleges under oath that he has no recollection of having executed the document in question and if he did sign the document he was tricked into so doing by the defendant, Spring. It is plaintiffs' position, however, that it is unnecessary to determine Mr. Adams' competency at this stage of the proceedings inasmuch as they take the position that directors of a Delaware holding company, substantially all of the assets of which consist of voting control of its subsidiary, may not lawfully delegate their management duties to trustees. Plaintiffs also contend that the 1954 trust is void for another reason, namely because its effect is to encumber trust property beyond the term fixed by an earlier trust and beyond the ten-year period permitted by the Delaware statute governing voting trusts.

First, have the directors of Clearance unlawfully delegated their duties? Section 101 of *Title* 8, *Del.C.*, permits incorporators generally to form a corporation "* * * for the transaction of any lawful business, or to promote or conduct any legitimate objects or purposes * * *." The charter of Clearance permits legal title to corporate property to be vested in the name of, or to be operated by others in trust. Section 123 of *Title* 8, *Del.C.*, specifically permits a Delaware corporation to hold shares of stock of any other corporation. Finally § 218 of *Title* 8, *Del.C.*, permits stockholders of Delaware corporations to deposit stock in a voting trust for an initial term not exceeding ten years. In my opinion Clearance not only had the legal right under Delaware law to own stock of General, but also had the legal right to deposit this stock in a voting trust. Compare *H. M. Byllesby & Co. v. Doriot,* 25 *Del.Ch.* 46, 12 *A.2d* 603.

Plaintiff argues forcibly that notwithstanding the Delaware statutes and the fact that six out of seven Clearance directors serve as trustees of the General voting trust, the creation of the trust has effected an improper delegation of authority, citing § 141 of *Title* 8,

*Del.C., Knickerbocker Inv. Co. v. Voorhees,* 100 *App.Div.* 414, 91 *N.Y.S.* 816, *Kennerson v. Burbank Amusement Co.,* 120 *Cal.App.* 2d 157, 260 *P.2d* 823. While the *maxim delegatus non potest delegare* has been a principle of Anglo-Saxon law since the dim beginnings of modern times, it has lost its force as a result of the impact of the management problems of big business and government. I conclude that the broad powers granted by the Delaware Corporation Law permit for a limited time the divorce of control from ownership which plaintiffs here attack, *Perry v. Missouri-Kansas Pipe Line Company,* 22 *Del.Ch.* 33, 191 *A.* 823, and that the persons availing themselves of the provisions of the Delaware voting trust statute may expect to have it applied literally.

The fact that a literal interpretation of the Delaware voting trust statute permits in the present case a possible perpetuation of executive power on the part of individual directors and trustees does not in my opinion invalidate the General voting trust in the absence of any showing of statutory violation, fraud or overreaching. In fact, plaintiffs make no charge of actual fraud as to the purpose of the trust merely asserting that the individual defendants are seeking to retain corporate power and the normal emoluments of office that go with such power. I am satisfied by a reading of defendants' affidavits concerning the individual defendants' past, present and future positions in the Gary system and the general presumption that directors act honestly that the General trust was formed as a result of the exercise of sound business judgment for the purpose of ensuring continuity of corporate management and is in the best interests of the stockholders of Clearance Corporation. On a motion for preliminary injunction the court must consider not only the law but facts in determining the probability of a plaintiff's ultimate success, *Allied Chemical & Dye Corporation v. Steel & Tube Co.,* 14 *Del.Ch.* 117, 122 *A.* 142. Plaintiff's motion for preliminary injunctive relief on the grounds that the General voting trust is void as an unlawful delegation of power by the directors of Clearance will be denied.

Plaintiffs secondly contend that the General voting trust is void and so unsusceptible of ratification by plaintiffs because it in effect brought about an unlawful extension of a Delaware voting trust.

In 1951, voting control of Clearance was placed in a voting trust made up of the same eleven trustees of the later General trust. Six of these trustees were directors of Clearance Corporation. The Clearance trust, had it not been terminated, would have expired on May 31, 1961. It provided that it might be terminated by the plaintiff, A. F. Adams, and has been terminated by him. Plaintiffs argue that the true trust *res* of not only the Clearance trust but also of the General trust is control of Theodore Gary and Company, and that the actions of the Clearance directors have not only encumbered this trust *res* beyond the term fixed in the Clearance trust, but that such actions also contravene the public policy of the State as expressed in § 218 of *Title* 8, *Del.C.*

The principle that the Delaware voting trust statute, being in derogation of the common law, must be strictly construed is conceded, *Appon v. Belle Isle Corp.,* 29 *Del.Ch.* 122, 46 *A.2d* 749, Affirmed 29 *Del.Ch.* 554, 49 *A.2d* 1; *Brady v. Mexican Gulf Sulphur Co.,* 32 *Del. Ch.* 372, 88 *A.2d* 300. It is also conceded that a trustee may not encumber a trust with an obligation running beyond the term of the trust. Plaintiffs, however, misconceive the *res* of the trusts in question. The *res* of the Clearance trust was the stock deposited in such trust. The *res* of the General trust, as properly alleged in the complaint, is the block of 6,015 shares of General voting stock owned by Clearance and deposited in such trust. The ultimate control of Theodore Gary and Company was the object in mind during the existence of the Clearance trust, and such is the obvious purpose of the General trust. But be this as it may, this suit is concerned with a new trust also consisting of a specific trust *res* and not with the burdening of improper extension of an earlier trust. Admittedly voting trustees cannot fraudulently vote themselves into power by creating voting rights in debentures issued to them, *Brown v. McLanahan,* 4 *Cir.,* 148 *F.2d* 703, 159 *A.L.R.* 1058, nor can trustees extend a trust beyond a precise statutory term, *Kittinger v. Churchill Evangelistic Association,* 151 *Misc.* 350, 271 *N.Y.S.* 510, affirmed 244 *App.Div.* 877, 281 *N.Y.S.* 680. It has also been held that where the statute requires voting trustees to surrender certificates of stock within thirty days after a voting trust is terminated, such trustees may not perpetuate themselves in office by

electing themselves corporate directors shortly before their term as trustees under an arrangement made in a bankruptcy reorganization was to expire, *Friedberg v. Schultz,* 312 *Ill.App.* 171, 38 *N.E.2d* 182.

In all of these cases, however, there is to be found either an indication of self-serving fraud, a statutory violation or as in the last cited case an improper attempt at self-perpetuation in power of temporary reorganization trustees.

Delaware requires that the voting trust statute be complied with, but I can find no legislative intent justifying the striking down of a trust, which was created in 1954, and unless sooner terminated under its provision has an initial term of almost nine years to run and which has for its lawful purpose efficient management of the telephone properties known as the Gary system.

While the health of Mr. Adams was not a matter raised by plaintiffs' attorney in his strictly legal argument as to the voidness of the General voting trust, it is a matter which must be considered by the Court if plaintiffs are to be denied injunctive relief at this stage. If the General stock in Gary is to be voted, presumably a merger will take place as a result of which dominant power will rest with the owners of General Telephone Corporation or their representatives. If plaintiffs may reasonably expect to succeed on final hearing they are entitled to injunctive relief if their full rights are to be preserved pending such hearing.

By sworn complaint the plaintiff, A. F. Adams, disavows any recollection of having executed the voting trust agreement, however, documents in the record disclose that for many months after the trust was formed Mr. Adams participated in its activities by executing "decisions" which was the means whereby approval by the individual trustees of contemplated trust action was indicated. The deposition of Mr. Adams' personal physician presents a picture of a man, who though physically incapacitated during the period in question, was aware of the realities of his business affairs both at the time the trust was formed and for a number of months after it went into operation. The total picture presented is of an aging founder of a large business concern, who, in the interests of such business, surrenders his control,

only to grab for the reins which he has recently loosed. I am satisfied that he was not only a party to the policy decision which brought about the creation of the 1954 trust but that he understood the impact of that decision. The probabilities of the plaintiff, Adams, establishing his own incompetence at final hearing are too remote to warrant use of this Court's injunctive powers at this juncture, *Poole v. Hudson, 7 Terry* 339, 83 *A.2d* 703.

Plaintiffs' motion for a preliminary injunction is denied.

Order on notice.

