PETER F. MASSEY and HESTER ANN MASSEY, his wife, and LUANOR F. BARRETT,

*vs.*

EDMUND STOUT and SAMUEL M. COLLINS, Sheriff.

*Kent, Sept. T. 1871.*

The power of the Court to remove trustees appointed by deed or will, is exercised very sparingly, the principle being maintained that there must be a clear necessity for its interference, in order to secure the trust fund against loss or misapplication.

The Court will not remove a trustee appointed by deed or will, for error or misjudgment in some special transactions, or even for a breach of trust. There must be such gross negligence or misconduct as to evidence a want either of capacity or fidelity, putting the trust in jeopardy.

Where the trust is not put in jeopardy, the remedy against a trustee for a breach of trust is to charge him for the consequences of his acts; or he may be enjoined from any improper act meditated, but not executed.

An attempt by the trustee to call in the trust fund from an investment made pursuant to the will, under which the principal was amply secure, and the income promptly and regularly paid, for the *purpose of using the money on his private business*, would be a grave breach of trust. But whether such a purpose, yet unexecuted, would be a sufficient ground for removing the trustee, depends upon whether the circumstances evidence *mala fides* on the part of the trustee indicating the future insecurity of the fund under his control.

A power given by will to a trustee, to call in and re-invest the trust fund, is one of those discretionary powers which the Court will not control, further than to see that it is exercised *bona fide* and with ordinary prudence.

Where circumstantial evidence is relied on to prove fraud, the circumstances must be both clearly established and conclusive in-their nature.

It is a principle of law, no less than of charity, not to impute to fraud any conduct of a party which may reasonably be consistent with an honest purpose.

BILL IN EQUITY FOR THE REMOVAL OF A TRUSTEE AND FOR AN INJUNCTION.—This bill is filed for the removal of the defendant, Edmund Stout, from his trusteeship of certain funds held by him under the residuary clause of the will of John Chambers, deceased, for the use of the complainants, Hester Ann Massey and Luanor F. Barrett, during their respective lives, and afterwards, for their children. The trust fund for each of said complainants consists of $1570.09½, it being one-fourth part of the clear residue of the testator's estate, each being a residuary devisee of one-fourth part. The will directed that the shares of his estate to be taken by the complainants, should be invested "upon judgment bond and mortgage," with power expressly given·to the trustee to call in and reinvest the same, during the lifetimes. of the respective *cestuis que trust*. Pursuant to this direction, after the set-

tlement of the estate, the two shares of the complainants, Hester Ann and Luanor, were invested by the trustee as one fund upon the bond and mortgage of Mark G. Chambers for $3140.20, bearing date January 1, 1862. On the 7th November, 1867, a *fieri facias* was issued upon the judgment entered on the bond, pending which, this bill was filed, praying a decree to remove the trustee and to restrain the collection of the fund as it now stands invested. So far the facts are undisputed.

In support of the prayer of the bill, it is alleged by the complainants, that the object of Stout, the trustee, in calling in the trust fund is, to use it in a mercantile business, in which he is about to engage ; that he had informed the complainants, Hester Ann and Luanor, of such, his purpose, and declared his determination to persist in that purpose, notwithstanding their expressed objections to such a proceeding, as being contrary to the direction of the will, and likely to impair the security of the trust fund ; also that the trustee, when called upon and remonstrated with by his sureties in the testamentary bond given by him as executor of John Chambers's will, admitted his intention to use the trust fund in his contemplated business, and offered to indemnify them against any loss they might sustain in consequence. The bill, in order to negative the existence of any proper ground for calling in the trust fund, alleges that the fund is well secured upon real estate estimated to be worth $12,000, and that the interest on the investment has been regularly paid to the trustee by Mark G. Chambers.

As a further ground of relief, it is alleged that the trustee, when settling with Hester Ann Massey for the semi-annual interest due her in July 1864, being $47.10, deducted from it $4 against the remonstrances of Hester Ann, the trustee claiming to be entitled to such allowance for his services in the trust, and that at every semi-annual payment of interest made since that date, he has retained

a part of the interest due Hester Ann under the like claim. The amount so retained is not stated in the bill.

By the answer, so far as it applies to the points at issue, the trustee denies that, in calling in the trust fund, he had any purpose to invest the money in his mercantile business, alleging that his object was to reinvest it in bond and mortgage, pursuant to the authority of the will. He also denies, in substance, that he ever expressed any such purpose to either of the complainants ; also, he denies the allegation that his sureties in the testamentary bond called on him and objected to his collecting the fund and using it in his own business.   He admits that he casually had a conversation with the sureties, or one of them, after proceedings had been commenced for collecting the fund, in which the sureties or surety expressed a fear lest they might be in jeopardy if the money should be collected ; but an offer made by the trustee to indemnify them, gave full satisfaction.  ·The trustee admits that on one occasion, he had a ·conversation with Luanor F. Barrett, one of the complainants, and with her only, with respect to the calling in of the trust fund, in which he expressed his disposition to collect it on the ground that Mark G. Chambers had not paid the interest promptly, and that he, the trustee, was, in consequence, obliged to advance it out of his own pocket ; but he denies that any objection or remonstrance was offered by Luanor F. Barrett, but that, on the contrary she acquiesced in the propriety of his suggestion, and only requested that the money might be collected without adverse proceedings ; and the trustee states that he gave Chambers four months' notice of his purpose, if possible, to collect the money. The answer, while it alleges that the mortgaged real estate has been somewhat depreciated by the decline in market values and the cutting of some timber, sufficiently admits the security of the principal of the trust fund as now invested ; but he denies that the interest has been

regularly paid by Chambers, although by the receipts, it might so appear, and alleges that he has been obliged, at times, to advance the interest out of his own pocket; that Chambers is becoming more involved in debt and will be the less able to pay his interest punctually, and that these were the reasons for his determination to call in and reinvest the fund; and he insists upon his unquestionable right, expressly given by the will, and also incidental to all such trusts, when not expressly restricted, to call in and reinvest the money at his discretion, provided this be done in the mode directed by the testator.

Then with respect to the other charge, viz; his exacting compensation from Hester Ann Massey, the answer admits that he did, several times, deduct from her income some small sums of money, not exceeding, as he believes, in the whole, ten dollars, which he retained, not as a remuneration for his personal services as trustee, but in order to cover expenses, costs and trouble to which he was put in investing the trust fund, and by reason of certain proceedings had against him, as garnishee of Hester Ann's husband, with respect to her income; also, to cover the expense of stamps upon her receipts for income. The answer alleges that Hester Ann made no objection to these deductions at the time they were made, but, on the contrary, acquiesced in them as being reasonable. The trustee states that, if he erred in retaining these sums, it was through ignorance of the law; and he submits himself to any order of the Court for their reimbursement.

Testimony to the points in issue were read on behalf of both parties, the material parts of which are noticed in the opinion of the Chancellor.

*Massey* and *Day*, for the complainants.

1. The trustee is not entitled to compensation for services, only to be reimbursed expenses and indemnified

for loss necessarily incurred. *Manning vs. Manning* 1 *Johns. Ch.* 526 ; *Robinson vs. Pett*, 3 *P Wms.* (249) ; *Egbert vs. Brooks*, 3 *Harring.* 110.    This charge of commissions was positive misconduct, such as should cause his removal. 2 *Sto. Eq. Jur.* 1289.

2. The power to call in, must be used only when it will be for the benefit of the trust and the Court will see whether it be so exercised.   Otherwise, the trustee might sink the fund in expenses. *Hill on Trustees,* 708. (1.) When the fund is well invested, his power is not arbitrary, but to be exercised only so far as required by the interest of *cestui que trust.* (2.) He had no right to use the fund for his own benefit.   *Adam's Eq.* 206.

*Comegys* and *Reed,* for the defendants.

This trustee, not being an officer of the Court but one appointed by will, which determines the scope of authority, he is vested with discretion ; and nothing short of abuse, neglect, misconduct or incapacity will induce the interference of the Court. *Lowther vs. Lowther*, 13 *Ves.* 101 ; *Hill on Trustees* 274; *Jervis vs. White*, 6 *Ves.* 738 *note* 3 ; *Adam's Eq.* 206 (*n*) ; *Middleton vs. Dodswell*, 13 *Ves.* 266; 2 *Sto. Eq. Jur. Sec.* 1289; *Coventry vs. Atty. Gen.* 7 *Bro. P. C.* 225 ; *Ex parte Greenhouse et al.*, 1 *Madd. R.* 69.

Respecting the taking of compensation to a small amount, his dealing with *the cestuis que trust* was *bona fide* and may, therefore, be sustained.   *Adam's Eq.* 61-2 ; 2 *L. Cas. in Eq.* 315 & 328.

The acquiescence in the charge is an estoppel. It was a voluntary payment by a competent party. *Morse vs. Royall*, 12 *Ves.* 355 ; *Hillary vs. Waller*, 12 *Ves.* 269 ; *Adam's Eq.* 218-20.

The same considerations apply to the application to restrain the trustees from calling in the fund.   Appre-

hended danger is never a ground to restrain altogether, but only until security be given.

THE CHANCELLOR :—

The Court of Chancery has exercised its power for the removal of trustees appointed by will or deed very sparingly. The principle maintained is, that there must be a clear necessity for its interference, in order to secure the trust fund against loss or misapplication. The instances of removal furnished by adjudged cases are found, on examination, to proceed upon grounds, such as these, viz :—Some personal disability to execute the office, such as arises from ill health, old age, mental infirmity, removal abroad, or marriage of a female trustee. So, also, abandonment or neglect of the trust, to the jeopardy of the interests involved, bankruptcy of the trustee; also, such acts of misconduct as show *mala fides* and personal unfitness on the part of the trustee for the confidence reposed in him. *Lewin on Trusts*, (711); 2 *Sto. Eq. Jur.* 1287, *&c.*; *Hill on Trustees* (191) *n.* There have been some other special grounds of interference by the Court, but they are all of such nature as to involve a total disqualification for the useful discharge of the trust as the case of *Uvedale vs. Ettrick*, 2 *Cha., Cas.* 130, in which a joint trustee was removed, though without any personal default, becuuse of such hostile relations between the trustees that they could not act together, so that the interposition of the Court became necessary for the safety of the fund, and the due execution of the trust or, as in the cases, *A. G. vs. Pearson*, 7 *Sim.* 290 and *A. G. vs. Shore*, 6 *Ib.* 460, trustees of a religious charity, holding different opinions from those of the founder, were removed because they were thereby disqualified to administer the charity usefully for the purposes intended. But, on the other hand, the Court will not remove a trustee for error or misjudgment in some special transactions, or even for a breach of trust. There must be such gross negligence or miscon-

duct as to evidence a want, either of capacity or fidelity, putting the trust in jeopardy. Without this, the remedy for a breach of trust is to charge the trustee for the consequences of his acts; or he may be enjoined from any improper act meditated but not yet executed. *A. G. vs. Coopers' Co.* 19 *Ves.* 192; *A. G. vs. Cain's College*, 2 *Keen*, 150; *Thompson vs. Thompson*, 2 *B. Mon.*, 16. Wilful misconduct or some gross default, are features appearing in all the cases I have met with of removals for breach of trust. *Ex parte Phelps*, 9 *Mod.* 357; *Coventry vs. A. G.*, 7 *Br. P.C.* 235; *Ex parte Reynolds*, 707; *Ex parte Greenhouse*, 1 *Madd* 60; *Cooper vs. Day*, 1 *E.L. and Eq.* 26; *Harper vs. Straws*, 14 *B. Mon* 48; *Webb vs. Dietrich*, 7 *W. & S.* 401. Still less will the Court interfere on the ground that a trustee has, in a particular transaction, acted otherwise than as the Court would have deemed expedient, or upon grounds not altogether satisfactory to the Court, if, being entrusted with a discretion over the subject-matter, the trustee does not appear to have exercised it corruptly. *Lee vs. Young* 2 *Yo. & Coll.* 532.

The principle which governs the Court is best illustrated, for the purposes of the present case, by the cases cited from 19 *Vesey* and 2 *Keen*, In the former, *A. G. vs. The Coopers' Company*, a charity school having been founded by will for the teaching of poor children, *gratis*, in a building to be erected as was specially provided by the will, the master had, as the Court considered, very materially departed from the purposes of the founder particularly by removing the school out of the original building, and converting the building into a dwelling house ; also by taking pupils for private tuition. Lord Eldon, upon an information filed for the better regulation of the charity, decreed accordingly ; but he refused a prayer for the removal of the Master, observing that "it is not the habit of this Court " to remove where there has been any misunderstanding " as to the duty." In the case of *A. G. vs. Cains College*,

36—DEL. CH. IV.

which concerned the management by the Master and Fellows of the College of a charity school, there had been great errors and irregularities in the management of the property and in the application of the income ; yet the M. R., Lord Langdale, although he made a decree for the better regulation of the charity, refused to remove the trustees. The testator's intention in that case, that the school should be kept in connection with the college, presented one strong objection to a change of the trustees ; but, apart from this, the Court clearly considered that the *bona fides* of the Master and Fellows, and the absence of corrupt or improper motives, would have been a sufficient reason for retaining them in the trust.

We may then proceed to the question which, under the rule thus settled, becomes the material one in the present case, viz : Has there been proved such wilful misconduct on the part of this trustee, as to impeach his fidelity, showing him to be unworthy of confidence and rendering the fund unsafe in his hand ? I put the question as one of *positive misconduct*, because there is not the slightest impeachment of the trustee's capacity for business, or of his pecuniary responsibility ; nor is negligence imputed. The charge is of wilful misconduct.

This charge embraces two particulars, which need to to be separately considered.

*First*, It is alleged that the trustee has attempted to call in the trust fund from an investment made pursuant to the will, under which the principal was amply secure and the income promptly and regularly paid, *for the purpose of using the money in his private business.* Such a use of the fund, contrary to the express provision of the will for investment, would be a grave breach of trust. But whether a purpose, yet unexecuted, so to use the fund would be a sufficient ground for removing the trustee, depends upon the circumstances. If the circumstances

should evidence *mala fides* on the part of the trustee, making it clear that the fund would be unsafe under his future control, the Court would remove him ; but if, through ignorance or inattention, and without any corrupt motive, a trustee should think he might lawfully hold and use the trust fund under some vague idea of securing it by a lien on his own property, the Court might well be content to restrain the improper use of the money, and to order such an investment of it as the will authorizes, not removing the trustee unless, after instruction as to his duty, he should persist in disregarding it.

Now it will be found, on examination of the testimony to the charge under consideration, that the utmost departure from the direction given in the bill for investment on bond and mortgage which the trustee seems to have meditated, was to let his son have the money, when collected, as a loan from himself, and to secure it to the objects of the trust by a first mortgage on his own farm, which farm appears, upon other testimony, to have been of ample value to secure the trust fund.   According to the testimony of Thomas Draper, one of Stout's testamentary sureties, the trustee appears to have had such a disposal of the money under consideration.   Draper states that, in his conversation with Stout, he alluded to a report that Stout "was going to let his son have the money to use in "the mercantile business at Magnolia ;" that Stout, in reply, did not say whether such was or was not his intention, but, after speaking of the probability of his building a store for his son at Magnolia, remarked that, "if he did "let his son have the money he should lend it to him as his " (Stout's)own money, and that he would secure it by a first " mortgage on his own farm." This is all the testimony in the cause, tending to show that the trustee contemplated any unauthorized use of the money.   For it will be observed that this charge of the bill, of an intention to use the trust fund in the trustee's business, rests wholly upon

certain admissions alleged to have been made in connec-
tion with Luanor F. Barratt, and with Stout's testamen-
tary sureties.    As to the conversation with Luanor
F. Barratt, the answer flatly denies any such admis-
sion to her ; and there is no testimony whatever
against the answer.    With respect to the conversations
with the testamentary sureties, both sureties are examined.
The conversations with them were separate.    In that with
Robert Wilson, as detailed by him, Stout's declarations
of his object in calling in the fund were in harmony with
the statement of the answer, viz ; that " he was going to
"invest the money somewhere, where it would be safe and
" he could have better control of it."    Nothing appears to
have been said by Stout, in that conversation, of any
purpose to use the money in his own business, or to lend
it to his son.    An effort was made, in the argument, to
raise circumstantial proof of a fraudulent purpose in col-
lecting the trust fund out of certain acts of the trustee ;
such as his refusing to satisfy Chambers' inquiry as to
what he intended to do with the money ; his not answer-
ing definitely to Draper's allusion to the report of his,
(Stout's) intention to loan it to his son ; and his offer to
indemnify the sureties, gratuitously made as if, under a
consciousness of some improper design and an anxiety to
forestall any objection from them.    Now, unquestionably
fraud may be, and usually is, proved by circumstantial,
and not by direct evidence ; but it is always held that to
prove fraud, the circumstances must be both clearly
established and conclusive in their nature.    The circum-
stances here relied on, are altogether inconclusive.    So
far from reaching the grade of proof, they do not raise a
reasonable suspicion of a fraudulent purpose.    The
trustee's reticence of his plans to Chambers is naturally
accounted for by the manifestly unpleasant relations
between them at that time.    The answer of the trustee
to Draper, respecting the report of an intended loan of
the money to his son, was about as definite as his purpose

in this matter seems to have been, *i. e.*, that he was likely
to set up his son in business at Magnolia, and that if he
did let his son have the money, he would secure it on his
own property.   This answer does not imply an attempt
at concealment, but only an undecided purpose, which,
with no testimony to the contrary, must be taken to have
been his exact state of mind.   Then, as to the suggestion
that the offer to indemnify the sureties was voluntary, and
prompted by the consciousness of some improper design,
it appears, from Draper's testimony, that the offer was not
gratuitous, but was drawn out by the apprehension
expressed by Draper, that some risk might result from a
change of the investment.   It appears from Draper's
testimony that, prior to this conversation with Stout,
some uneasiness on his part had been excited by Chambers
himself, and that he had written to Wilson on the subject.
Stout, in introducing the conversation, alludes to rumors
of objections, on the part of the sureties, against the
collection of the money.   Under these circumstances,
the offer to indemnify them was natural and raises no just
suspicion.   It is a principle of law, no less than of charity,
not to impute to fraud any conduct of a party which may
reasonably be consistent with an honest purpose.

We may, then, return to the testimony of Draper, and
take up, as the only evidence in the cause bearing upon
the intention of the trustee in calling in this fund, what
he said respecting a loan of it to his son.  The whole effect
of this testimony is, that Stout was then holding under
consideration a loan of the money to his son, the same to
be secured to the objects of the trust by a first mortgage
of his own farm, a property of sufficient value.   Now, al-
though this was not a proper investment of the trust fund,
the fact that the trustee had such an investment of it
under consideration, does not impeach his *bona fides*; for
he may have honestly supposed that he could lend his
money to his son and secure it on his own farm.   This is

a conclusion which the Court is free to draw from the circumstances ; for, although there is a general presumption that a man understands his legal powers and obligations, this applies only so far as to charge him with the legal consequences of his acts, in favor of others who have been affected by those acts ; it does not apply to a mere question of motive or personal integrity inquired of as affecting his fitness for a trust or office. Now the tenor of this conversation with Draper and all the circumstances, warrant the belief that Stout's error, in supposing he could loan this fund to his son and secure it on his own property, was one of judgment.

There was no apparent effort at concealment from Draper ; and when the latter suggested a doubt whether such an arrangement could be made, Stout promptly replied that it could, and Draper says he himself agreed that, so far as concerned the safety of the fund, it would be as secure on his farm as it was on Chambers'. Further, it does appear that Stout, if he seriously entertained this purpose, abandoned it, a result which the doubt suggested by Draper would naturally explain: for, in the conversation between Stout and Wilson, a year after the one with Draper, no allusion is made on either side to any loan of the money to Stout's son, but Stout expressed his intention to be to invest the money "somewhere where it "would be safe and he could have better control of it." His language implies that no particular place of investment was, at this time, contemplated. Taking the whole of these conversations with Draper and Wilson, together, their bearing upon the question of Stout's honesty of motive is favorable to him ; and although it is from Stout's own declarations respecting his purposes that we draw this conclusion, still, the complainants having put these declarations in evidence, must abide by them as a whole. The Court cannot accept them so far as they might serve to charge Stout, and reject their bearing in his favor,

unless that portion which is favorable were discredited by some evidence in the cause, of which there is nothing.

The *other* ground for the removal of the trustee, alleged in the bill, may be briefly disposed of. It is charged— and such is the fact—that the trustee, when paying over to Hester Ann Massey, one of the *cestuis que trust*, her semi-annual income in July, 1864, and in several instances afterwards, retained a small sum out of each payment. There is some discrepancy of evidence as to the amounts retained, but that is immaterial. The receipts show the following to have been the sums retained, and upon what grounds, viz. ; July, 1864, $1.00, for collecting and paying over the interest and passing receipts ; January, 1865, $1,00, for the same services ; January, 1866, $2.35 as a commission of 5 per ct. for the same services, and in July, 1866, January, 1867 and July, 1867, the like sum of $2.35 as a commission for the same services. These deductions were illegal. The trustee, by his answer, alleges that they were made by him in ignorance of the law ; and he submits himself to the order of the Court. I am disposed to accept the explanation of the answer to this extent, inasmuch as the motive of the trustee enters essentially into the charge, so that the explanation is responsive to the bill, and what was the motive of a party in a particular transaction is known only to himself.

I am not satisfied that these charges were made dishonestly or oppressively ; and full justice may be done, by a decree that the trustee reimburse the amounts retained, with interest.

This disposes of the prayer for the removal of the trustee. There remains, however, a question raised by the argument, whether, even although the proof fails to convict the trustee of a purpose to use the trust fund in his business, the Court will not take into consideration the fact that the fund is now securely invested, and that the

interest has been, as is alleged, promptly paid, and restrained the trustee from changing the investment without cause, and to the incurring of needless expense. I think not. The power given by the will to this trustee to call in and re-invest the trust fund, is one of those discretionary powers which the Court will not control, further than to see that it is exercised *bona fide* and with ordinary prudence. *Hill on Trustees*, 728, 731, 735, *note* (1); *De Manneville, vs. Crompton*, 1 *V. & B.* 352 ; *French vs. Davidson, et al.*, 3 *Madd. R.* (396); *Lee vs. Young*, 2 *Yo. & Coll.* 532 ; *Costabadie vs. Costabadie*, 6 *Hare* 410.

It will restrain a change of securities, when attempted for dishonest purposes, or to the jeopardy of the fund. But where neither *mala fides* nor danger to the fund appears, the trustee will be left at liberty to call it in and re-invest it according to his own judgment, or even to suit his personal convenience or preference, the re-investment being, of course, made in accordance with such mode as the instrument creating the trust may prescribe. If, thereby, needless expense is incurred, the trustee will be charged with it. If changes of investment should be persisted in to a wanton and wasteful extent, the Court would then interfere ; but such a case is not the one before me. Here, no *mala fides* appears, not the slightest danger to the fund is apprehended, the personal responsibility of the trustee and his business capacity being unquestioned ; and this being the first attempt to call in the fund during a series of years, it cannot be pronounced capricious or wanton.

My conclusion is, that the bill must be dismissed, so far as it prays the removal of the trustee, and the injunction dissolved. But I may, under the prayer for general relief, if the complainant, Hester Ann Massey so desire, decree the reimbursement to her of the amounts retained by the trustee out of her semi-annual income, with interest.