In the Matter of the Trust Estate of MARY E. CATELL, Deceased.

*New Castle, July 15, 1944.*

*Ivan Culbertson,* for petitioners.

*Henry R. Isaacs,* for William T. Knowles, surviving trustee.

HARRINGTON, Chancellor: Mary E. Catell died testate, a resident of the City of Wilmington, April 27th, 1938. The petitioners are beneficiaries under her will and seek to remove the survivor of the two trustees to whom she bequeathed and devised her residuary estate. They allege in the petition filed: (1) that the will of the deceased does not authorize William T. Knowles, the surviving trustee, to act; (2) that, in any event, he has failed to give the bond for $25,000, required by the will of the deceased, or any other bond, to safeguard the trust estate; (3) that there are conflicting interests between the trust estate and the estate of Thomas C. Catell, the husband of the testatrix, of which William T. Knowles is also the executor and William W. Knowles, now deceased, the residuary legatee, so that the surviving trustee cannot administer the trust estate in an impartial manner; and (4) that both William W. Knowles and William T. Knowles have always been hostile to the said Carrie J. Dreibelbies and Edward T. Dreibelbies, and have not acted in a fair and impartial manner toward them with respect to the trust estate of Mary E. Catell, deceased; that they have failed to carry out the duties imposed upon them by the will of the deceased, having refused to pay the taxes and insurance on the real estate devised to the said Carrie

J. Dreibelbies for life, and by reason thereof the interests of your petitioners are seriously jeopardized.

The will of Mary E. Catell, deceased, in part, provides:

"Fifth: I give, devise and bequeath the property known as No. 121 West Twenty-ninth Street, Wilmington, Delaware, unto my husband, Thomas C. Catell, for and during the term of his natural life. In the event my sister, Carrie J. Dreibelbies, survives me, and also survives my husband, I give, devise and bequeath the said property unto my said sister, for and during the term of her natural life. This provision for my sister is only effective at the death of my husband. Upon the termination or failure of the life estates hereinbefore created, I direct that the property above mentioned shall go to and be sold by my Trustee or Trustees hereinafter named, and the proceeds thereof shall be distributed by them in the manner hereinafter provided for the distribution of the corpus of the trust for my husband and sister. * * *

"Sixth: I give, devise and bequeath all my property, real, personal and mixed, unto William T. Knowles and William W. Knowles, in trust nevertheless that the said Trustees shall manage and control the property and funds hereby bequeathed and devised to them, giving to them the full power to take possession of said property, both real and personal, to collect the rents from said real estate, to invest the money in good safe interest-bearing securities, and in every way to care for and preserve the estate coming into his or their hands in such manner as to him or them shall seem wise and prudent. * * * I will and direct that the above mentioned trust estate shall remain undivided and continue in trust for and during the term of the natural life of my husband, Thomas C. Catell, and I empower and direct my said Trustee or Trustees to pay to Thomas C. Catell all the income from the above created trust estate or portions of the principal in such amounts and at such times and in such a manner as my said Trustee or Trustees in his or their absolute and unqualified discretion may from time to time deem proper, provided, however, that at no time shall my said Trustee or Trustees pay less than Ninety Dollars ($90.00) per month to my said husband for his maintenance and support. I will and direct, however, that my said Trustee or Trustees shall not pay my said husband in any one year amounts in excess of Thirty-five Hundred Dollars ($3500.00). I direct that the said payments of income or principal shall be made solely to Thomas C. Catell, my husband and his receipt for such payments shall be a sufficient discharge to said Trustees to show a proper expenditure of income or principal. In the event Thomas C. Catell becomes incapacitated to the extent

that he cannot manage his affairs, then I direct that my said Trustee may, within the limits above mentioned, pay directly for any and all expenses necessary for the support and maintenance of the said Thomas C. Catell. Upon the death of Thomas C. Catell, in the event the Estate of Thomas C. Catell is insufficient to meet the reasonable burial expenses of the said Thomas C. Catell, then I direct that my said Trustees are authorized to pay for said burial expenses and to put a marker of the same kind and character as heretofore authorized for myself, in the burial lot at Lehighton, Pennsylvania.

"I will and direct that before the said William T. Knowles and William W. Knowles enter upon their duties as Trustees they shall be required to give bond in the sum of Twenty-five Thousand Dollars ($25,000.00). In the event either of my said Trustees predecease my husband, I direct that all the rights, powers, privileges and duties, etc., shall inure to and bind the survivor. In the event William T. Knowles and William W. Knowles should predecease my husband, I direct that the Wilmington Trust Company shall be substituted with all the rights, powers, privileges and duties imposed on the said William T. Knowles and William W. Knowles.

"Upon the death of my husband, Thomas C. Catell, and in the event my sister, Carrie J. Dreibelbies, survives my husband, I direct that my said Trustees continue to hold the corpus of said trust fund in their hands and pay the sum of Sixty Dollars ($60.00) per month from the income unto my sister, Carrie J. Dreibelbies, for and during the term of her natural life, my said Trustees to accumulate the balance of the income for and to the benefit of the corpus of the trust fund.

"Upon the death of all the beneficiaries of the trusts hereinbefore created, I direct that my trust estate be distributed in the following manner. * * *

"I give, devise and bequeath the sum of Five Hundred Dollars ($500.00) to the Woman's Foreign Missionary Society of the Methodist Episcopal Church, a corporation under the Laws of the State of New York (Philadelphia Branch), the receipt of the Treasurer of said Branch to be a sufficient discharge for the payment of this legacy, and it is my request that the Treasurer use this sum for work in China.

"I give, devise and bequeath the sum of Three Hundred Dollars ($300.00) to the Wesley Methodist Episcopal Church, at Lehighton, Pennsylvania. * * *

"After the payment of these bequests, and in the event Edward T. Dreibelbies is living at the time for the distribution above mentioned * * * I give, devise and bequeath the balance of the Estate unto William T. Knowles and William W. Knowles, or the survivor, and

in the case of the death of both, to the Wilmington Trust Company, to hold the same in trust, subject to all the powers, duties and obligations heretofore made in connection with the creation of the trust for Thomas C. Catell, said Trustee or Trustees to pay the income arising from said trust fund to Edward T. Dreibelbies, for and during the term of his natural life. Upon the death of Edward E. Dreibelbies, or in the event he is deceased at the time for the distribution above mentioned, or upon the failure of all trusts where the corpus of the fund is not heretofore disposed of, I direct that my said Trustee or Trustees, or Executor or Executors, as the case may be, after paying above bequests, shall distribute the remainder of the funds in the following manner, to-wit:

"I give, devise and bequeath the sum of Five Hundred Dollars ($500.00) to the Home of Merciful Rest, Wilmington, Delaware.

"All the rest, residue and remainder, I direct shall be equally divided between Wesley Methodist Episcopal Church, at Lehighton, Pennsylvania, and the Woman's Foreign Missionary Society of the Methodist Episcopal Church, a corporation existing under the laws of the State of New York (Philadelphia Branch), receipt of the Treasurer of said Branch to be a sufficient acquitance and discharge for the payment thereof, and it is my desire that they employ a teacher either in China or India."

Thomas C. Catell, the husband of the deceased, survived her, but died January 21st, 1942. Her sister, Carrie J. Dreibelbies, and her nephew, Edward T. Dreibelbies also survived her, and are both living.

Upon the death of Mary E. Catell, William T. Knowles and William W. Knowles assumed the trusteeship of her residuary estate, and continued to act as trustees until the death of William W. Knowles, on or about December 1st, 1942. Since then William T. Knowles has continued to act as surviving trustee. The bond for $25,000, required by the will of Mary E. Catell, was not given when the trustees assumed their duties, or during the lifetime of William W. Knowles. Shortly after his death, the surviving trustee apprized the attorney for the petitioners that because of the uncertainty as to whether a bond, with surety, was intended, and, if so, who the obligee would be, no bond had

been given. He also mentioned the cost of a corporate bond to the trust estate.

The petition seeking the removal of the surviving trustee was filed April 7th, 1943. Shortly thereafter, William T. Knowles filed a bill asking this court to construe the will of Mary E. Catell, deceased, and determine whether the giving of a bond, with surety, by the trustees was intended. The trust estate then amounted to slightly less than $40,000, and a few days later William T. Knowles, on his application, was permitted to give a bond with corporate surety for that amount. This was nearly five years after the death of Mary E. Catell, and over the objection of the petitioners' attorney. When the bond was given, it was made clear that it was without prejudice to the rights of the parties.

While perhaps not too clearly proved, this court will take judicial notice that both William W. Knowles and William T. Knowles were members of the bar of this State.

The first account on the trust estate, covering the period from September 29th, 1938, to December 31st, 1941, was filed April 1st, 1942, and showed an income received of $6,591.78, from which the trustee had paid Thomas C. Catell $3,813.62. Mr. Catell received no regular monthly payments, but the entire income from the fund was turned over to him from time to time, in various amounts, as he needed money and requested that payments be made. On March 12th, 1941, the trustee paid him $1,663.62, which was the final payment of income for the year 1940, and a memorandum on the check so stated. It seems that no other payments were made to him in 1941. In the latter part of that year, or early in 1942, he became ill and it was necessary to move him to a hospital. On January 2nd, 1942, a check for $200 was drawn from the income and deposited to the credit of William T. Knowles in a special account, to be used for the payment of nurses and hospital expenses, as Mr. Catell was unable to attend to those details. That sum was almost en-

tirely used for the intended purposes before his death, and the small balance was ultimately paid to the executor of his estate as part of the income which had accrued in Mr. Catell's lifetime.

William T. Knowles, the surviving trustee, was the executor of Thomas C. Catell's will, and on May 19th, 1942, after Mr. Catell's death, he paid to himself, as executor, $1,313.24, being income which had accrued in the year 1941. The account showed that amount due the estate of Thomas C. Catell, deceased, and no exceptions were filed thereto; the actual payment was not made until some weeks after the account was filed.

At the time of Mr. Catell's death, his personal estate amounted to approximately $24,000, which included a bank account of more than $2,000. While the income from the trust estate exceeded $90 per month, it did not amount to $3,500 a year. No part of the capital was paid to Thomas C. Catell, or used for his benefit in any way; nor were his funeral expenses paid from the trust estate.

William T. Knowles was the son of William W. Knowles, the residuary legatee under the will of Thomas C. Catell, and became entitled to a part of his father's estate at his death in December of 1942.

There was no proof that the trustees notified the Philadelphia Branch of the Woman's Foreign Missionary Society and the Wesley Methodist Episcopal Church at Lehighton, Pennsylvania, that they were ultimate beneficiaries under the will of Mary E. Catell, deceased; but when the first account was filed in April of 1942, the Register in Chancery duly notified all of the interested parties that it was on file and could be inspected by them. Neither the Home of Merciful Rest, of Wilmington, Delaware, nor the church at Lehighton, Pennsylvania, joined in the petition for the removal of the surviving trustee, but the minister of that church was present at the hearing and advocated his removal.

The solicitor for the petitioners does not discuss in his brief the first and fourth grounds alleged for the removal of the trustee, so they will not be considered.

The power of this court to remove a trustee, appointed by a deed or will, is merely ancillary to its duty to see that the trust is administered properly, and in most cases will be exercised sparingly. *Broeker v. Ware,* 27 *Del. Ch.* 8, 29 *A. 2d* 591; *Massey v. Stout,* 4 *Del. Ch.* 274; 1 *Scott on Trusts,* § 107.1; 65 *C. J.* 618. When, therefore, the trust property is not endangered by a lack of capacity, honesty or fidelity, some mere negligent breach of duty arising largely from an honest mistake, may not be sufficient to justify removal. *Broeker v. Ware, supra; Massey, v. Stout, supra;* 2 *Story's Eq. Jur.,* § 1289; *Perry on Trusts,* (*4th Ed.*) §§ 276, 817. In most cases, a mere lack of confidence in the trustee by some, or all, of the *cestuis que trust,* or friction between them, is not a sufficient ground. *Perry on Trusts, p.* 477.; 1 *Scott on Trusts,* 107. But a court will usually remove a trustee if his duties as such are in conflict with his individual or other interests. 65 *C. J.* 619; 1 *Scott on Trusts,* § 107. The allegation that William T. Knowles has not performed his duties as trustee because of other conflicting interests, is based on that part of Item 6 of the will of Mary E. Catell which directs the trustee "to pay to Thomas C. Catell all the income from the trust estate or portions of the principal in such a manner and at such times * * * as my said Trustee or Trustees in his or their absolute or unqualified discretion may from time to time deem proper." That direction is followed by the proviso that "at no time shall my said Trustee or Trustees pay less than Ninety Dollars ($90.00) per month to my said husband for his maintenance and support"; and the testatrix then directs that the payments to him shall not exceed thirty-five hundred dollars ($3,500.00) "in any one year." In considering the duties and powers of the trustees, the petitioners stress the words "for his (Thomas C. Catell's) maintenance and sup-

port," and claim that the payment made to his executor after his death, though it represented income which had accrued during his lifetime, was so clearly illegal and improper that it could only have been dictated by other conflicting interests. They, therefore, draw the conclusion that the surviving trustee has abused his powers, and should not be permitted to continue to act in that capacity. The trustees could have sought instructions from this court before making the payment of $1,313.24, and in view of the personal interests involved, perhaps prudence should have dictated that step; but the sum paid seems to have been due Mr. Catell's estate, and the surviving trustee should not be removed on that ground.

Apparently the words relied on by the petitioners were not intended to restrict and modify the express direction "to pay" to Mr. Catell "all the income from the trust estate." Within specified limits, the trustees were permitted to use their discretion with respect to the amounts and times of payment to the life beneficiary; but he was entitled to the whole of the income accruing during that period, not exceeding $3,500 a year. The direction that "the said payments of income or principal shall be made solely to Thomas C. Catell," and that his receipt be a sufficient discharge, is not inconsistent with this conclusion. Nor does the evidence show any irregularity with respect to the $200, deposited to a special account for the purpose of paying the hospital and other expenses of Mr. Catell during his last illness.

But the testatrix expressly directs that "before * * * William T. Knowles and William W. Knowles enter upon their duties as Trustees they shall be required to give bond in the sum of Twenty-five Thousand Dollars ($25,000.00)." Unquestionably, that direction should have been complied with, and the delay in giving bond cannot be justified. *Huston v. Weed,* 242 *Ill. App.* 495; 65 *C. J.* 606,

608. When a will merely requires a trustee to give bond, settled practice dictates that it be with surety and that the state be the obligee; and whatever the financial worth of the trustees might have been, they had no right to disregard the clearly expressed intent of the testatrix. See 3 *Bogert on Trusts and Trustees*, § 527, *p.* 1667. The fact that both were members of the bar of this State makes their neglect even less understandable. If they were uncertain as to their duties, they should have promptly sought instructions from this court; but as the trust estate has suffered no loss, and no other serious irregularities appear, the surviving trustee will not be removed for his failure to give bond.

Some of the nonresident beneficiaries did not know of their interests in the fund until the Register in Chancery notified them that the trustees had filed an account in his office, which could be inspected by them; but it does not appear that they were in any way injured by the neglect of the trustees to notify them of their rights. Nor do the petitioners seek to remove the surviving trustee on that ground.

The petition is dismissed; but the costs, including a reasonable fee to the solicitor for the petitioners, will be taxed against the respondent.

An order will be entered accordingly.