K. McKINLEY SMITH,

*vs.*

THE BIGGS BOILER WORKS COMPANY, a Delaware corporation, THEOFIL E. KRIZANEK and CHARLES W. STEADMAN, as Voting Trustees of a purported Voting Trust Agreement.

*New Castle, September 3, 1952.*

*David Snellenberg, II*, and *John Van Brunt, Jr.*, of the firm of Killoran & Van Brunt, for plaintiff.

*William E. Taylor, Jr.*, for defendants.

BRAMHALL, Vice-Chancellor: Plaintiff and defendant Krizanek were each the holder of 50% of the outstanding common stock of The Biggs Boiler Works Company, a Delaware corporation. Subsequently Krizanek transferred a one-sixth interest to a third party. Plaintiff is a resident of the State of Connecticut; the individual defendants are residents of the State of Ohio. On December 6, 1950, at Cleveland, Ohio, plaintiff and defendant Krizanek executed an agreement, purporting to be a voting trust agreement, and naming the plaintiff and the individual defendants as the voting trustees for this stock. The agreement provided that any two of the three named trustees would have the power to vote all the stock. At the time of the execution of the agreement the certificates for all of said stock were on deposit with The First National Bank of Akron, Ohio, under a refunding agreement between plaintiff and defendant Krizanek and the former owners of the stock. There was also outstanding an option agreement for the sale of one-third of all the common stock. The agreement provided that the certificates should not be deposited with the trustees, but should remain in escrow with the bank at Akron, Ohio, until September 30, 1951, the time on which the refunding agreement expired. Under certain conditions the stock would not be delivered to the trustees at all, in which event the agreement to create a voting trust would be terminated. Until the deposit with the said trustees of the certificates of stock which were the subject of the agreement the stock was not to be registered in the names of the voting trustees on the books of the corporation. The agreement also provided that the

certificates should be considered for the purposes of the trust as if they had been actually deposited with the voting trustees and as if new certificates had actually been issued to them. The certificates of stock have never been deposited with the voting trustees, nor have they ever been registered in their names on the records of the corporation. The record does not disclose that a copy of the agreement was ever filed in the principal office of the corporation in this state, as provided by *Section* 18 *of Chapter* 65, § 2050, *Revised Code* 1935.

In the amended complaint, designated as an amended and supplemental complaint, filed on April 25, 1952, in addition to the facts set forth in the original complaint, plaintiff complained of certain actions of the defendants occurring after the filing of the original complaint and by reason thereof included in the amended and supplemental complaint a prayer for the removal of the defendant Steadman as a voting trustee.

The corporation was summoned by service on its resident agent and the defendant trustees were served by publication pursuant to *Paragraph* 4374, *Revised Code* 1935. Counsel appeared specially for the individual defendants to move for the vacation of the order for service by publication and to dismiss for want of jurisdiction. Both motions were denied. The amended complaint was served on the attorney who had appeared for defendants to make the motions aforesaid.

The defendants have filed a number of motions relative to the amended and supplemental complaint, which, in effect, raise the following questions:

(1) Must the defendant Krizanek be joined as a party defendant in his capacity as a stockholder?

(2) Does this court have jurisdiction over the defendants upon the amended complaint?

(3) Is the voting trust agreement valid?

(4) Should the defendant Steadman be removed as a voting trustee?

(1) Must the defendant Krizanek be joined as a party defendant in his capacity as a stockholder?

Defendants contend that Krizanek as a stockholder in the company is a necessary and indispensable party and must be joined as a defendant.

■■ I see no merit in this contention. The action against Krizanek is against him only in his capacity as a voting trustee and not as a stockholder. While a stockholder may be joined as a necessary party and if he is not he will not be bound in that capacity by any judgment which may be rendered in the suit, the motion to amend will not be denied on that ground. See *West v. Sirian Lamp Co.*, 28 *Del.Ch.* 328, 42 *A.2d* 883. This court has jurisdiction of voting trustees involving shares of stock in Delaware corporations. *Perrine v. Pennroad Corporation*, 19 *Del.Ch.* 368, 168 *A.* 196. This authority includes the power of removal for cause. It is ancillary to the duty of the court to see that the trust is properly administered. *Broeker v. Ware*, 27 *Del.Ch.* 8, 29 *A.2d* 591; *In re Catell's Estate*, 28 *Del.Ch.* 115, 38 *A.2d* 466. In this action Krizanek as a stockholder is therefore not an indispensable party.

(2) Does this court have jurisdiction over the defendants upon the amended complaint?

Defendants have moved to strike the amended and supplemental complaint of the plaintiff on the grounds: (1) that the amended and supplemental complaint sets forth a new cause of action and that therefore service thereof must be made in the same manner as service of an original complaint; (2) that defendants are in court only by reason of a special appearance and that therefore proper service may be made only upon them and not upon counsel.

■ Generally a supplemental complaint may be filed for the purpose of setting forth facts which have occurred since the filing of the original bill. If these supplemental facts should warrant, additional relief may be prayed for. The practice in the federal courts with respect to supplemental complaints (the rule in this court is similar) is set forth in *Moore's Federal Practice, Vol. 3, p.* 859, (*2 Ed.*), as follows:

"While a matter stated in a supplemental complaint should have some rela-
tion to the cause of action set forth in the original pleading the fact that the supple-
mental pleading technically states a new cause of action should not be a bar to its
allowance but only a factor can be considered by the court in the exercise of its
discretion; and, of course, a broad definition of 'cause of action' should be applied
here as elsewhere."

See *Miller v. Cook*, 135 *Ill.* 190, 25 *N.E.* 756, 10 *L.R.A.* 292; *Story's
Equity Pleading*, (*8th Ed.*) *Sec.* 336.

 In the original complaint plaintiff asserted the invalidity
of the agreement as a voting trust agreement. According to plain-
tiff's allegations in the amended and supplemental complaint, the
defendant trustees at a purported special meeting of the corpora-
tion stockholders on April 16, 1951, acting as voting trustees under
said voting trust agreement, voted the stock purported to be
assigned under said agreement to remove the plaintiff as a direc-
tor of the corporation and a successor was elected in his place.
On April 17, 1951, as alleged by plaintiff, at a purported special
meeting of the directors of the corporation, plaintiff was removed
as president and secretary, at which time, or shortly thereafter,
every connection which plaintiff had with the corporation was
severed. On May 7, 1951, concurrently with the filing of this action,
plaintiff filed suit in this court, asking for a decree invalidating
said special meeting of stockholders and the action taken thereat.
This court declared the alleged voting trust agreement to be
invalid, held said meeting illegal and ordered plaintiff reinstated
as a director and officer of the corporation. The amended and sup-
plemental complaint, in addition to the allegations above referred
to, also included an additional prayer that Steadman be removed
as a voting trustee.

The supplemental complaint is therefore an adjunct to the
original complaint. It merely sets forth facts occurring subse-
quent to the filing of the original bill and, as a result of those facts,
adds an additional prayer for relief.

Where there is a good cause of action stated in the original
complaint, a supplemental complaint setting forth facts subse-
quently occurring which justify other and further relief is proper.
*City of Texarkana v. Arkansas, Louisiana Gas Co.*, 306 *U.S.* 188,

620, 59 *S.Ct.* 448, 455, 83 *L.Ed.* 598. See also *Freeman v. Bee Machine Co.*, 319 *U.S.* 448, 63 *S.Ct.* 1146, 87 *L.Ed.* 1509; *Bartlett v. New York, N. H. & H. R. Co.*, 226 *Mass.* 467, 471, 115 *N.E.* 976; *Shaw v. Bill*, 95 *U.S.* 10, 24 *L.Ed.* 333. Those defendants who are already in court are bound to take notice of the filing of a supplemental complaint to the same extent that they are bound to take notice of other proceedings in the cause. *French v. Hay*, 22 *Wall.* 238, 22 *L.Ed.* 854.

█ This court has already decided, and its opinion in this respect has been affirmed by the Supreme Court, that the present action is an action in rem and that an order for substituted service under the provisions of 4374 of the *Revised Code of* 1935 will lie against the individual defendants as trustees. They are therefore now in court and are bound to take notice of the filing of an amended complaint to the same extent that they are bound to take notice of any other proper proceeding in the cause. *French v. Hay, supra.* There is therefore no occasion for a subpoena. The fact that the defendants have not seen fit personally to accept copies of the amended and supplemental complaint does not affect the plaintiff's action. That defendants had actual notice of the filing of the supplemental bill is apparent from the motions which have been made on their behalf. *Perrine v. Pennroad Corporation, supra.* Further notice to the defendants of the amended and supplemental complaint was not necessary.

(3) Is the voting trust agreement valid?

In a companion action hereinbefore referred to, instituted at the time the present action was begun, plaintiff prayed that the action of the stockholders of the corporation in removing plaintiff as a director be set aside and the plaintiff reinstated as a director and officer of the corporation on the ground that the voting trust agreement was illegal. At that time the stock which was to be assigned to the voting trustees was still subject to both the refunding and option agreements and could not have been deposited with the trustees. This court in that case held the voting trust agreement to be invalid to the extent that it affected the stockholders' meeting and ordered the action of the stockholders set aside.

■ ■ A voting trust as commonly understood is a ·device whereby persons owning stock with voting powers divorce the voting rights thereof from the ownership but retain to all intents and purposes the latter in themselves and transfer the former to trustees in whom the voting rights of all depositors in the trust are pooled. *Peyton v. William C. Peyton Corporation*, 22 *Del. Ch.* 187, 194 *A.* 106, 110. It is a trust in the accepted equitable sense and is subject to the principles which regulate the administration of trusts. *Chandler v. Bellanca Aircraft Corporation*, 19 *Del.Ch.* 57, 162, *A.* 63; *H. M. Byllesby & Co. v. Doriot*, 25 *Del.Ch.* 46, 12 *A.2d* 603. Under a voting trust agreement the voting power of the stock is separated from the beneficial interest, the trustee or trustees holding such legal title as is necessary to separate the interest. See *In re Morse*, 247 *N.Y.* 290, 160 *N.E.* 374.

Even in the absense of a statute prescribing the method for the creation of a voting trust it would be necessary that some act be performed which would be construed as giving to the voting trustee or trustees the authority to vote the certificates. In the case of *Cliffs Corporation v. United States*, 308 *U.S.* 575; 60 *S.Ct.* 91, 84 *L.Ed.* 482, the court in construing the Ohio statute held·that' the execution of the two voting trust agreements passed title and all indicia of ownership to the trustees, without endorsement on the certificates or transfer on the corporate records. The court stated that the owner may dispose of his shares in such manner as would be sufficient to pass title to any chose in action or intangible *"unless a particular mode of transfer is prescribed by statute or in the corporate charter or by-laws."* 103 *F.2d* 77, 80.

■ Whatever may have been the rule under the common law relative to the validity of voting trust agreements, it is now clear, under *Sec.* 18 *of the General Corporation Law*, that their very existence now depends upon that statute. No voting trust may now be created in this state unless it complies with that statute. *Perry v. Missouri-Kansas Pipe Line Co.*, 22 *Del.Ch.* 33, 191 *A.* 823; *In re Chilson*, 19 *Del.Ch.* 398, 168 *A.* 82. When the Legislature passed the statute setting up the terms and conditions under which a voting trust would be valid, it occupied the whole field. *Perry v. Missouri-Kansas Pipe Line Co., supra.*

*Sec.* 18 provides: (1) that the stock must be deposited with the voting trustee or trustees; (2) that the trustee or trustees may vote said stock for a period not exceeding ten years; (3) that a copy of the agreement shall be filed in the principal office of the corporation in the State of Delaware; (4) that certificates of stock shall be issued to the voting trustees to represent any stock so deposited with them; (5) that in the certificates so issued it shall appear that they are issued pursuant to the voting trust agreement; and, (6) that in the entry of such voting trustees as owners of such stock in the proper books of the issuing corporation that fact shall be noted.

In the language of this section the Legislature indicated clearly that it intended these provisions to be mandatory. It has been so held by the courts of this state. *Perry v. Missouri-Kansas Pipe Line Co., supra; In re Chilson, supra.* As stated in *Perry v. Missouri-Kansas Pipe Line Co., supra,* in the absence of a statute voting trusts were not looked upon favorably by courts in many jurisdictions and in many states where their validity was recognized they were circumscribed by many limitations. In passing upon a statute permitting voting trusts under conditions prescribed in the statute, where prior thereto voting trusts were looked upon at least with some disfavor, the Legislature must have intended that there be a strict compliance with the statute; otherwise, the voting trust would be illegal. See *In re Chilson, supra; Perry v. Missouri-Kansas Pipe Line Co., supra.*

In the present case there is an attempt to set up a voting trust, in which it is expressly agreed that the certificates shall be subject to two outstanding agreements: (1) a refunding agreement, and, (2) an option to purchase. Under certain conditions of the refunding agreement the voting trust would not take effect at all; under certain conditions in the option agreement a portion of the stock would never be delivered to the voting trustees. The agreement further provided that the holding of the stock by the Ohio bank would constitute a deposit with the trustees until the termination of the refunding agreement, at which time the stock was to be deposited with the trustees. That was to be considered by the parties as a compliance with the statute. At the present

time, while the stock is not now subject to the two agreements herein referred to, and can, as far as the voting trust agreement is concerned, be delivered to the trustees, they are now being held by the Ohio bank under order from a court in that state pending the outcome there of certain proceedings in which plaintiff and the individual defendants are parties. Such an agreement does not create a valid voting trust in accordance with the conditions laid down in the statute.

Defendants contend that even though under the provisions of *Sec.* 18 the voting trustees cannot vote the stock until the shares are deposited with them, this does not mean that shareholders are prohibited from agreeing to transfer their shares to the voting trustees at a future date and thereby setting up, in futuro, a voting trust which would be in all particulars in conformity with *Sec.* 18.

The difficulty which I have with this argument is that the intention of the parties, as clearly expressed in the agreement, is to establish a voting trust in praesenti. There is no language in the agreement from which it can be construed that it was the intention of the parties to create a voting trust at some future time. It is true that the trust provides for the delivery of the certificates by the Ohio bank upon the termination of the refunding agreement, provided, that under the terms of said refunding agreement said certificates are to be returned at all. However, it is not provided, or even inferred, in the agreement that the voting trust shall not become effective until that time. In fact, paragraph two of the agreement provides that the deposit of the certificates with the Ohio bank under the refunding agreement shall constitute a deposit with the voting trustees for all purposes of the trust. That the defendant trustees did not construe this agreement to be in futuro is clearly indicated by their actions. Subsequent to the execution of the agreement and prior to September 30, 1951, the date of the expiration of the refunding agreement, the defendant trustees, acting as a majority of the voting trustees, attempted to vote this stock at a meeting of the stockholders of the corporation for the purpose of removing the plaintiff as a director.

The only inference which I can obtain from the language of the agreement is that the parties intended that the deposit with

the bank should constitute a present deposit with the trustees. That is neither a fact nor is it in compliance with *Sec.* 18.

Another objection to defendants' argument is that the stock is not even now deposited with the trustees, but is still held by the Ohio bank awaiting the determination of litigation in Ohio. There is still not a compliance with the provisions of *Sec.* 18. Therefore, if I accept defendants' statement as a correct statement of the law and also determine that there was an intention on the part of the parties to the voting trust agreement to establish a voting trust *in futuro*, which I do not, *Sec.* 18 has still not been complied with.

(4) Should Steadman be removed as a voting trustee?

Plaintiff prays for the removal of Steadman as a voting trustee. Although I have declared the voting trust agreement to be invalid, in view of the attitude of the defendant trustees in this case, particularly with reference to actions pending in this state, I deem it advisable to discuss this phase of the case.

Even if I were to assume the voting trust agreement to be valid, I would grant plaintiff's prayer for the removal of Steadman as a voting trustee. The control of the affairs of the company is in the hands of the voting trustees. In order that its business affairs be handled in such a manner as would be conducive to its best interests, it is necessary that there be a normal business relationship among those who control its management. The bitter feeling existing between the plaintiff and the defendant trustees makes such relationship impossible. Steadman, as a lawyer, has been concerned with representing the company and the defendant trustees in all its legal·matters. The record does not disclose fully to what extent he has been the guiding light in the proceedings which have been instituted in disregard of the decree of this court. However, it is reasonable to assume, in view of Steadman's training and the testimony offered, that he has been largely responsible for these actions. At least he understood fully the effect of the actions which were instituted.

The power to remove a trustee is ancillary to the duty of the court to see that the trust is administered properly and

that power will generally be exercised sparingly. *Broeker v. Ware,* *supra; In re Catell's Estate, supra.* The mere fact that there is discord between the parties to a trust will not ordinarily warrant a court in removing a trustee. *In re Catell's Estate, supra.* However, when that discord has reached such a stage that a trustee has refused to discuss matters of business of importance to the company to such extent that the welfare of the company is thereby jeopardized, then the continuance in office of that trustee would be detrimental both to the trust and to the best interests of the company. *May v. May,* 167 *U.S.* 310, 17 *S.Ct.* 828, 42 *L.Ed.* 179; *In re Hodgson's Estate,* 342 *Pa.* 250, 20 *A.2d* 294; *McAllister v. McAllister,* 120 *N.J.Eq.* 407, 184 *A.* 723, *affirmed* 121 *N.J.Eq.* 264, 190 *A.* 52; *Taylor v. Errion,* 137 *N.J.Eq.* 221, 44 *A.2d* 356, *affirmed* 140 *N.J.Eq.* 495, 55 *A.2d* 11.

█ Although the usual proceeding for the removal of a trustee is a direct one instituted by complaint for that purpose, a removal may be allowed upon petition or motion in another action involving the administration of the trust. *Hackensack Trust Co. v. Kelly,* 120 *N.J.Eq.* 596, 187 *A.* 195. This has been done, for instance, in an action to enforce the execution of a trust. *Carlstrom v. Frackelton,* 263 *Ill.App.* 250; *Jones v. Jones,* 8 *Misc.* 660, 30 *N.Y.S.* 177. In another instance defendant sought removal of the complainant co-trustee, based upon allegations set forth in a counter-claim. *Vose v. Galpen,* 18 *Abb.Prac., (N.Y.),* 96. A trustee may be removed in an action for the approval of his accounts. *Vol.* 3, *part* 1, *Bogert on Trusts and Trustees, note* 38, *p.* 282.

It is admitted that the plaintiff was removed as a director and officer of the company. It is undisputed that Steadman represented the corporation in an action against the plaintiff for representing himself as an officer of the corporation, although by the decree of Acting Vice-Chancellor Layton, in the companion proceeding hereinbefore referred to, the voting trust agreement was declared invalid, insofar as it affected the stockholders' meeting in which the plaintiff was ousted as a director, and the action of the defendant trustees in voting to remove the plaintiff as a director was declared invalid and the plaintiff ordered reinstated as a director and an officer of the company. In spite of the fact

that in that proceeding Acting Vice-Chancellor Layton declared the voting trust agreement invalid and an appeal by the company from his order was pending in the supreme court of this state, the defendant trustees instituted an action against the plaintiff in the State of Ohio, asking a court of that state to declare the same agreement valid.

Plaintiff testified that although the company was prosperous during the time plaintiff was president, in April of 1951 he was summarily removed both as a director and as an officer and all relations which plaintiff had had with the company were then terminated. When plaintiff was reinstated by order of this court, defendant trustees refused, according to the testimony of the plaintiff, to recognize the decree of this court in so holding and continued to ignore the plaintiff in his capacity as a director and officer of the corporation. Instead, they instituted the action in the Ohio Court above referred to. Most of this testimony is admitted; none of it is contradicted.

While the testimony of the plaintiff is somewhat incomplete and general in nature, nevertheless, where all the facts are peculiarly within the knowledge of the defendants, such statements, particularly in the absence of contradiction, may be accepted. *Vol. 3, part 1, Bogert on Trusts and Trustees, page 282.* The stock held by the plaintiff and defendants at the time of the agreement constituted all of the voting stock of the company. The evidence before me clearly demonstrates, and I so conclude, that the relationship between the plaintiff and the defendant trustees is so bitter and unpleasant as to prevent the trustees from cooperating in the proper management of the company. The action of the defendant trustees in openly and flagrantly disregarding the decree of this court, is, of itself, sufficient to warrant their removal. See cases cited in *Vol. 3, part 1, Bogert on Trusts and Trustees, page 299.* As evidence of the bitter personal feeling existing on the part of defendant trustees and their inability to cooperate with plaintiff for the best interests of the company, their attitude in this respect proves conclusively that the prayer of the plaintiff for the removal of Steadman as a voting trustee should be granted.